Mary F. GABRIELSON, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–532.

United States Court of Veterans Appeals.

Sept. 20, 1994.

Louis N. Hiken, San Francisco, CA, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Adrienne Koerber, Deputy Asst. Gen. Counsel, and John C. Winkfield, Washington, DC, were on the brief, for appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

FARLEY, Judge, filed the opinion of the Court.

HOLDAWAY, Judge, filed a concurring opinion.

FARLEY, Judge:

Appellant, the widow of veteran Dale E. Gabrielson [hereinafter the veteran], appeals from a May 3, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied her claim for dependency and indemnity compensation (DIC) benefits after concluding that the cause of the veteran's death was not service connected. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). On consideration of the record on appeal and the briefs filed by the parties, the Court will vacate the decision of the Board and remand the matter for further proceedings consistent with this opinion.

## I.

The veteran was a career Naval officer, serving from June 25, 1965, until he retired on July 1, 1985. Record (R.) at 124. In the "Report of Medical History," dated June 3, 1985, he reported that his health was excellent, and that he used no medications. R. at 105. Dr. Bothwell, the Navy doctor who examined the veteran on that day, noted a fine hand tremor. R. at 103–04. She also recorded the veteran's statement that he drank five to six ounces of alcohol a day, and

that he denied any past history of alcohol problems, driving while intoxicated, or "loss of work time" due to alcohol use. R. at 106. There is no reference in the veteran's service medical records (SMRs) to alcohol abuse or liver diseases. R. at 47–102, 108–18. At the age of 46 and less than three years after his retirement, the veteran died on May 30, 1988. R. at 121. The records of the private hospital where he died reported that the veteran "stated that he was drinking three-quarters of a quart of bourbon every day for the past 30 years." R. at 153. The death certificate listed the immediate cause of death as bacterial sepsis "due to, or as a consequence of," liver failure, which, in turn, was "due to, or as a consequence of," the "underlying cause," which was alcoholism of 30 years' duration. R. at 121. At appellant's request, the death certificate was amended on September 2, 1988, to show that, prior to his death, the veteran had suffered from alcoholism for 15 years, rather than 30 years. R. at 122. Appellant explained that the attending physician had misunderstood the veteran's response when he asked how long the veteran had been drinking; instead of stating that he had been drinking since the age of 16 to 18, the veteran had said that he had been drinking for 16 to 18 years. R. at 204–05.

Appellant, on June 1, 1989, applied for DIC benefits for herself and two children, claiming that her husband's death was service connected. R. at 127–28. In an attachment to the application, appellant claimed that the veteran's alcoholism problem "began while in service" and was "related to stress, [and] pressure while on active duty." R. at 130, 133. She also asserted that the alcoholism "did not interfere [with his] job," that it became worse after his 1985 retirement, and that "his disability *had* to have begun while he was in the service" because "[a] liver is not destroyed in the three years between discharge and death." R. at 130. In a rating decision on August 25, 1989, service connection for the cause of death was denied for the reason that the SMRs "do not show any treatment for liver disease" and his alcoholism was "considered to be the result of willful misconduct." R. at 139. The rating decision further noted that the "liver failure is an

organic condition that resulted from his alcoholism. There is no indication that the veteran was treated for a liver condition in service. There is no indication that the veteran developed cirrhosis of the liver within the one year presumptive period following his discharge from service." *Id.*

Appellant filed a Notice of Disagreement on April 25, 1990, again contending that three years would not have been a sufficient period of time for alcohol to have destroyed the functioning of her husband's liver and kidneys. R. at 142. She further alleged that the hand tremor noted at his retirement physical supported her claim that her husband had visible signs of alcoholism at that time. *Id.* Her substantive appeal (VA Form 1–9), dated October 22, 1990, reasserted that the hand tremors were alcohol related and that it was her belief that the veteran "was at least 10% disabled from cirrhosis during the presumptive one year period." R. at 184.

At a personal hearing on December 19, 1990, appellant testified that the veteran's service assignments were stressful, particularly his service as an admiral's aide, which placed him in constant demand day and night, and which required that he attend all the admiral's parties, where a great deal of social drinking transpired. R. at 189–90. She further testified that, although he never drank during the day while he was working, she estimated that he consumed as much as one-half bottle of liquor nightly "toward the end of his career" and that his daily intake for the three years following his retirement in 1985 until his death "accelerated" to three-quarters of a bottle. R. at 190, 195, 196. Appellant also commented that during the last six years of the veteran's life, she noticed he had visible hand tremors, particularly in the morning. R. at 193–94. At the conclusion of the personal hearing, the hearing officer confirmed the prior denial of service connection for the cause of the veteran's death. R. at 208–09.

In April 1992 a Board medical adviser, Dr. Jack Rheingold, reviewed the evidence of record and stated "that it was quite conceivable" that the liver damage secondary to alcohol might have begun during service or within the applicable presumption period. R. at 218. The Board then referred the matter to Dr. Geoffrey Block for an independent medical expert (IME) opinion, advising him of Dr. Rheingold's report. R. at 223–24. The Board asked Dr. Block, a specialist in hepatology, to review the record and furnish the Board with his opinion as to whether there was objective medical evidence that cirrhosis was present during service or within one year thereafter. R. at 224. On November 12, 1992, Dr. Block advised the Board that there was no physical or laboratory evidence in the record to show that the veteran had any type of liver disease before his May 1988 admission to the private hospital where he died. R. at 227. Dr. Block opined that there was evidence to support a diagnosis of alcoholism and alcohol abuse at the beginning of the veteran's terminal hospitalization in May 1988, particularly the widow's report of "significantly increased ethanol use following discharge." R. at 228, 230. However, Dr. Block concluded that the veteran's

> service record, as well as relevant spousal testimony, did not otherwise indicate any evidence of interference with routine duties, personal relationships, or ability to perform the usual social, professional or personal activities of daily living.... The [veteran's] accounting of ethanol use at the time of discharge [5–6 ounces of alcoholic beverages per day] did not meet standard criteria for making a diagnosis of ethanol abuse, nor was the reported amount of ethanol use sufficient to reasonably expect to find significant liver injury in the absence of overt physical findings.

R. at 228–30. In a January 20, 1993, letter transmitted to the Board with a letter from her representative, appellant responded to Dr. Block's opinion by asserting that there were instances prior to the veteran's discharge from service where his alcohol consumption interfered with his daily living and his personal and social relationships, and that his liquor consumption during service was actually "½ quart of brandy ... a day with the amount greatly accelerated after his retirement [to] nearly a quart a day by the last two years...." R. at 234; *see also* R. at 232–33.

In its May 3, 1993, decision here on appeal, the Board principally relied on Dr. Block's IME opinion to deny service connection for the cause of the veteran's death. In addition, the Board found that "[t]he evidence summarized by the IME is consistent with that of record" and concluded:

[T]he appellant contends that the cause of the veteran's liver disease was alcoholism, which she claims began during his period of service. However, the fact that the veteran used alcohol in service does not, in itself, establish a basis for the grant of service connection or a basis for a finding that alcoholism was present in service. There is no diagnosis of alcoholism in the service medical records and, as noted by the IME, the medical evidence does not support a diagnosis of alcoholism. In any case, if in service the veteran did use alcohol to enjoy its intoxicating effects, and if such alcohol use had resulted proximately and immediately in disability, that disability would have been a result of willful misconduct, and therefore, not one for which service connection could have been granted. 38 C.F.R. § 3.301 (1992).

R. at 8–9.

Appellant seeks reversal of the Board's decision, contending primarily that it was based on the "clearly erroneous" factual finding that neither alcoholism nor cirrhosis was present during the veteran's service. The alcoholism finding, in particular, is challenged by appellant because the Board relied on an IME opinion, which in turn allegedly relied on incomplete information. *See* Appellant's Br. at 12. Appellant also argues that the Board improperly extended the willful misconduct bar to cirrhosis, a secondary, organic disease. *See id.* at 22.

## II.

### A.

■ Under 38 U.S.C. § 1310, the surviving spouse of a veteran whose service-connected disabilities were the principal or contributory cause of his death, and whose death occurred after December 31, 1956, may be eligible for DIC. *See* 38 C.F.R. § 3.312(a) (1993). For the purpose of determining DIC eligibility under 38 U.S.C. § 1310, whether a disability is service connected is established by applying chapter 11 of title 38 of the United States Code, which provides, inter alia, that "no compensation shall be paid if the disability is a result of the veteran's own willful misconduct...." 38 U.S.C. § 1110; *see also* 38 U.S.C. § 1310(a) (requiring that service connection be established under chapter 11 for DIC purposes); 38 U.S.C. § 105(a) (describing line of duty and willful misconduct); 38 C.F.R. § 3.301(a) (1993) ("Direct service connection may be granted only when [the] cause of death was incurred or aggravated in the line of duty, and not the result of the veteran's own willful misconduct."). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1993). A contributory cause of death must be causally connected to the death and must have "contributed substantially or materially" to death, "combined to cause death," or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c)(1) (1993). In deciding whether a veteran's death is service connected, the Board makes a finding of fact which the Court reviews under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

■ Moreover, the Board is required, by statute, to base its decisions on "all evidence and material of record" and to provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact or law presented on the record." 38 U.S.C. §§ 7104(a), (d)(1). In *Gilbert*, this Court noted:

In view of the mandate of [§ 7104(d)] that the BVA articulate with reasonable clarity its "reasons or bases" for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and suc-

cinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor "clear enough to permit effective judicial review", nor in compliance with statutory requirements. *Gilbert*, 1 Vet.App. at 57. Fulfillment of the reasons or bases mandate requires the BVA to set forth the precise basis for its decision, to analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant in support of the claim, and to provide a statement of its reasons or bases for rejecting any such evidence. *See, e.g., Peyton v. Derwinski*, 1 Vet.App. 282, 285 (1991); *Smith v. Derwinski*, 1 Vet.App. 235, 237–38 (1991); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169–70 (1991); *Ohland v. Derwinski*, 1 Vet.App. 147, 149–50 (1991); *Willis v. Derwinski*, 1 Vet.App. 66, 70 (1991); *Gilbert*, 1 Vet.App. at 59.

### B.

■ The IME report reaches a two-fold conclusion: neither a diagnosis of alcoholism nor a diagnosis of liver impairment could be supported at the time of the veteran's retirement from service. It is clear from a reading of his opinion that the IME based his conclusions primarily upon the statement made by the veteran and documented on the report of his discharge physical (R. at 106) that he had been drinking five to six ounces of alcohol per day. *See* R. at 228 (IME indicates that "drinking 5–6 ounces of alcoholic beverages per day (duration not recorded) ... would [not] indicate alcohol abuse"); R. at 229–30 (IME statement that the veteran's "accounting of ethanol use at the time of discharge did not meet standard criteria for making a diagnosis of ethanol abuse"). Neither the IME opinion nor the Board's decision references appellant's testimony that the veteran's actual liquor consumption was 16 to 24 ounces a day lasting over a period of either 15 or 30 years. R. at 190, 195–96. Similarly, the Board decision fails to discuss the letters of January 1993 from appellant and her representative, in response to the IME opinion, which assert that the veteran's use of alcohol interfered with his daily living and provide motives for why the veteran would have understated the amount of his alcohol consumption at the time of discharge. *See* R. at 232–34. Under these circumstances, the IME opinion here raises more questions than it purports to answer and indeed provides a weak foundation upon which to base a decision.

■ An IME opinion is only that, an opinion. In an adversarial proceeding, such an opinion would have been subject to cross-examination on its factual underpinnings and its expert conclusions. The VA claims adjudication process is not adversarial, but the Board's statutory obligation under 38 U.S.C. § 7104(d)(1) to state "the reasons or bases for [its] findings and conclusions" serves a function similar to that of cross-examination in adversarial litigation. The BVA cannot evade this statutory responsibility merely by adopting an IME opinion as its own, where, as here, the IME opinion fails to discuss all the evidence which appears to support appellant's position. Accordingly, the BVA decision here contained "neither an analysis of the credibility or probative value of the evidence submitted by and on behalf of appellant in support of [her] claim nor a statement of the reasons or bases for the implicit rejection of this evidence by the Board." *Gilbert*, 1 Vet.App. at 59. Therefore, the case should be remanded. *See Ledford v. Derwinski*, 3 Vet.App. 87, 89–90 (1992) ("A remand is required where the BVA fails to provide an adequate statement of the 'reasons or bases' for its findings and conclusions, with respect to both the merits and the application of the 'benefit of the doubt' under 38 U.S.C. § 5107(b)"). On remand, the Secretary will be given the opportunity to review the evidence of record, including *all* of the evidence pertaining to the amount of alcohol consumed by the veteran during service, to readjudicate appellant's claim, and to provide sufficient reasons or bases for its credibility and factual findings and conclusions, including its consideration of the benefit-of-the-doubt doctrine. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991); *see also* 38 U.S.C. § 5107(b) (requiring the Board to resolve all doubt in a claimant's favor when a balance of positive and negative evidence exists); *Williams v. Brown*, 4 Vet.App. 270, 273–74 (1993) (Board must consider and discuss the benefit-of-the-

doubt doctrine where "significant evidence" supports a claim).

## III.

In the penultimate paragraph of its decision, the Board gave three reasons for rejecting appellant's claim that her husband's alcoholism began in service: (1) the veteran's use of alcohol did not establish a diagnosis of alcoholism; (2) no such diagnosis appears in the veteran's SMRs; and (3) its adopted IME opinion that the medical evidence did not support a diagnosis of alcoholism, *but see* Part II. B, *infra* (discussing the IME opinion). The Board, apparently assuming for the sake of argument that a diagnosis of alcoholism existed in service, then stated:

> In any case, if in service the veteran did use alcohol to enjoy its intoxicating effects, and *if such alcohol use had resulted proximately* and immediately *in disability, that disability would have been* a result of willful misconduct, and therefore, *not one for which service connection could have been granted.* 38 C.F.R. § 3.301 (1992).

R. at 9 (emphasis added). As appellant here correctly contends, that statement of the law is incorrect when applied to the facts of this case, and to the extent that it affected the Board's determination, a remand is also required because the Board erred as a matter of law.

▮▮▮ Alcohol dependence is deemed by statute to be the result of willful misconduct and cannot itself be service connected. *See* 38 U.S.C. §§ 105(a), 1110. However, prior to November 1990, disabilities secondary to alcoholism were not covered by the "willful misconduct" bar. The VA regulation at that time stated that "[o]rganic diseases and disabilities which are a secondary result of the chronic use of alcohol as a beverage, whether out of compulsion or otherwise, will not be considered of willful misconduct origin." 38 C.F.R. § 3.301(c)(2) (1990). It was for the express purpose of "preclud[ing] payment of compensation for certain secondary effects arising from willful misconduct," including "injuries or disease incurred during service as the result of ... the abuse of alcohol," that 38 U.S.C. § 1110 was amended by the Omnibus Budget and Reconciliation Act of 1990, Pub.L. No. 101–508, § 8052, 104 Stat. 1388, 1388–1, 1388–351 (1990) (OBRA). *See* H.R. CONF.REP. No. 964, 101st Cong., 2d Sess. 997 (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017, 2374, 2702. As amended, 38 U.S.C. § 1110 now provides that "no compensation shall be paid if the disability is a result of the veteran's own willful misconduct *or abuse of alcohol* or drugs." (Emphasis added.) However, the statutory amendment applied only to claims filed *after* October 31, 1990. *See* OBRA, § 8052(b). As of this writing, the Secretary has yet to reflect the statutory change in the corresponding regulation, 38 C.F.R. § 3.301(c)(2), but the VA ADJUDICATION PROCEDURE MANUAL, M21–1 [hereinafter M21–1] now provides that "[f]or claims filed after October 31, 1990, the law prohibits granting service connection for primary and secondary disabilities resulting from abuse of alcohol or drugs. *DIC can no longer be paid for death resulting from similar etiology.*" M21–1, Part IV, para. 11.04 e.(1)(a) (emphasis added).

As the Secretary concedes, the willful misconduct bar would extend to cirrhotic liver failure found to be a secondary organic disease only if the DIC claim had been filed after October 31, 1990. *See* Secretary's Br. at 27. Here, however, appellant's DIC claim was filed on June 1, 1989, sixteen months prior to the "after October 31, 1990," effective date of the amendment to 38 U.S.C. § 1110. The misstatement of the proper legal standard by the Board was error, but the error was harmless because it did not, as of yet, result in prejudice to appellant. *See* 38 U.S.C. § 7261(b); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991). However, if on remand the Board's "[i]n any case" scenario comes to pass and the Board determines that there is a factual predicate for a diagnosis of alcoholism during the veteran's military service, then the Secretary must apply the correct legal standard.

## IV.

There is pending before the Court a motion by the Secretary to strike the extra-record material attached to appellant's brief. The provisions of 38 U.S.C. § 7252(b) require that review in this Court "shall be on the

record of proceedings before the Secretary and the Board." *See Moore v. Derwinski,* 1 Vet.App. 401, 406 (1991). The Court has held that it is "precluded by statute from considering any material which was not contained in the 'record of proceedings before the [Secretary] and the Board.'" *Rogozinski v. Derwinski,* 1 Vet.App. 19, 20 (1990) (citing 38 U.S.C. § 4052(b) currently found at 38 U.S.C. § 7252(b)); *see also Obert v. Brown,* 5 Vet.App. 30, 32 (1993); *cf. Bell v. Derwinski,* 2 Vet.App. 611, 612–13 (1992) (per curiam) (holding that VA records predating the Board decision on appeal are deemed to have been constructively "before the Secretary and the Board"). Since the materials appended to appellant's brief were not a part of the "record of proceedings before the Secretary and the Board," they were not considered by the Court in reaching its decision. *See Obert,* 5 Vet.App. at 32 (Court refused to consider appendix to appellant's brief containing material not before the Secretary and the Board). In view of the disposition of this appeal, the Secretary's motion will be denied as moot. Of course, appellant is free to submit additional material and argument to the Board on remand. *See Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992).

### V.

It is therefore decided, upon consideration of the foregoing, the record on appeal, and the parties' briefs, that the Board decision of May 3, 1993, is VACATED, and the matter is REMANDED for further proceedings consistent with this opinion. Upon consideration of the Secretary's motion to strike the extra-record material and appellant's motion in opposition thereto, both motions are DENIED as moot.

HOLDAWAY, Judge, concurring:

I concur with both the result and, based on our precedential case law, the analysis in Judge Farley's excellent opinion. I do feel compelled to point out, however, that the evidence that was "inadequately" discussed in the reasons or bases part of the BVA decision was contradictory and that the contradictions were those of the appellant and

her deceased husband. The husband gave a quite different account of his service drinking habits at the time of his retirement than he did later on. Moreover, his wife, the appellant, testified that the heavy drinking began only toward the end of his career. We now ask the Board, through the guise of the judicially enhanced reasons or bases statutory provision, to decide which version of this evidence was truthful and then, somehow, explain why they selected the version they did. I wish them well in this endeavor. The Court has engrafted requirements on the statutory reasons or bases provision that are simply not contained in the statute. It is now our precedent and I accept it. However, it is one cat that I would like to walk backwards, at least a little bit.