Citation Nr: 1602921 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 06-31 925 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to service connection for degenerative joint disease of the bilateral hips, status post bilateral hip replacements.


REPRESENTATION

Appellant represented by: Sean A. Ravin, Attorney


WITNESSES AT HEARING ON APPEAL

Appellant and spouse


ATTORNEY FOR THE BOARD

A. Solomon, Associate Counsel

INTRODUCTION

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran served on active duty from September 1955 to November 1957.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina, which denied the Veteran's claim for entitlement to service connection for degenerative joint disease bilateral hips, status post left hip replacement. Subsequent to this decision, the Veteran underwent a right total hip arthroplasty, and the issue on appeal has been recharacterized to address this development.

A hearing was held on June 15, 2007, by means of video conferencing equipment with the appellant in Winston-Salem, North Carolina, before Kathleen K. Gallagher, a Veterans Law Judge, sitting in Washington, DC, who was designated by the Chairman to conduct the hearing pursuant to 38 U.S.C.A. § 7107(c), (e)(2) and who is rendering the determination in this case. A transcript of the hearing testimony is in the claims file. 

In August 2007, the Board issued a decision denying entitlement to service connection for degenerative joint disease of the bilateral hips. The Veteran then appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court), and in a May 2009 Order, the Court vacated the August 2007 Board decision and remanded the matter to the Board for development consistent with the parties' Joint Motion for Remand (Joint Motion).

The Board subsequently remanded the case for further development in September 2009, June 2012, and June 2014. After completing the requested development, the Agency of Original Jurisdiction (AOJ) continued to deny the claim (as reflected in a January 2015 Supplemental Statement of the Case (SSOC) and returned the matter to the Board for further consideration. The Board thereafter denied the claim in a decision issued in April 2015. Unbeknownst to the Board, the appellant's attorney submitted a Freedom of Information Act Request (FOIA) request in March 2015 that was inadvertently sent to the AOJ and was not included in the evidence of record. In August 2015, in the interest of due process, the Board vacated its April 2015 decision denying entitlement to service connection for degenerative joint disease of the bilateral hips, and a responsive FOIA production was completed in August 2015. In December 2015, the Board received additional argument from the Veteran's attorney-representative in support of his claim. 


FINDINGS OF FACT

1. The Veteran's degenerative joint disease of the bilateral hips, status post bilateral hip replacement, has not been shown to be causally or etiologically related to the Veteran's military service.

2. The Veteran's degenerative joint disease of the bilateral hips did not manifest within one year of active service.


CONCLUSION OF LAW

The criteria for service connection for degenerative joint disease of the bilateral hips, status post bilateral hip replacement, have not been met. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

Upon receipt of a substantially complete application for benefits, VA must notify the claimant what information or evidence is needed in order to substantiate the claim and it must assist the claimant by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A; 38 C.F.R. § 3.159(b); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). The notice required must be provided to the claimant before the initial unfavorable decision on a claim for VA benefits, and it must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103(a); 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). 

The notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) veteran status; 2) existence of a disability; 3) a connection between the veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Upon receipt of an application for a service-connection claim, 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating or is necessary to substantiate the elements of the claim as reasonably contemplated by the application. Additionally, this notice must include notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. 

A predecisional letter, sent in June 2004, advised the Veteran what the evidence must show for service connection, the evidence the Veteran was expected to provide and the evidence VA would seek to obtain. An additional letter sent in March 2006 notified the Veteran of how a disability rating and effective date would be determined. Although the Veteran did not receive complete notice prior to the issuance of the initial unfavorable decision, the claim was subsequently readjudicated in a Statement of the Case and several Supplemental Statements of the Case. Thus, the Veteran has suffered no prejudice from any discrepancy of timing regarding the receipt of notice. See Prickett v. Nicholson, 20 Vet. App. 370, 377-78 (2006) (VA cured failure to afford statutory notice to claimant prior to initial rating decision by issuing notification letter after decision and readjudicating claim and notifying claimant of such readjudication in the statement of the case). Thus, the duty to notify has been satisfied with regard to this claim. See Dingess/Hartman, 19 Vet. App. 473.

In November 2004, VA sent the Veteran a letter informing him that his service medical records were likely destroyed in the July 1973 fire at the Records Management Center (RMC) in St. Louis, Missouri. When a claimant's medical records are lost or destroyed through no fault of the claimant, VA has a "heightened" duty to assist in the development of the claims. O'Hare v. Derwinski, 1 Vet. App. 365 (1991); Washington v. Nicholson, 19 Vet. App. 362, 369-70 (2005). The heightened duty to assist a Veteran in developing facts pertinent to his claim in a case where service records are presumed destroyed includes the obligation to search for alternative medical records. Moore v. Derwinski, 1 Vet. App. 401 (1991). 

VA asked the Veteran to return the NA Form 13055, Request for Information Needed to Reconstruct Medical Data, and to submit any service medical records in his possession, or documents that could substitute for service medical records, such as buddy statements. The Veteran submitted a January 2005 VA Form 21-4142, Authorization and Consent to Release Information to the Department of Veterans Affairs, requesting records from a hospital in Seoul, Korea from 1955. In March 2005, VA sent the Veteran a letter asking for additional information to complete the request, including his complete military organization, and a more specific time frame of three months or less for his alleged period of hospitalization. The Veteran was informed in this letter, as in the January 2005 letter, that he had until June 9, 2005 to submit this information. The Veteran did not provide further information. VA completed a June 2005 memorandum which reflected that the Veteran's service medical records were unavailable for review, and documented the attempts made to secure more information from the Veteran. Subsequently, in his notice of disagreement, received in December 2005, the Veteran contended that he was hospitalized in Korea in approximately August 1957, and was given a profile. He asked VA to obtain his personnel file for documentation of the light duty profile. In January 2006, the National Personnel Records Center (NPRC) responded that the Veteran's personnel file was also fire-related, but did provide one available related document, dated November 1957, that was not destroyed.

Regarding the Veteran's contention that he was hospitalized in Korea in 1957, the Veteran testified during his June 2007 Board hearing that he was hospitalized in 1957 after injuring his hips from falling down a mountain. When questioned by the VLJ, the Veteran was not sure that his hospitalization was in Seoul, Korea, or if it was at a military or civilian hospital. As noted above, the Veteran was asked for additional information in order to allow NPRC to search for any clinical or inpatient records. The Veteran has not been able to do so. The Veteran has not provided VA with the name of the hospital in which he received care, nor was he able to state whether it was a military or civilian establishment or even confirm that the hospital was in Seoul, Korea. Considering the aforementioned, the Board concludes that the RO's actions in attempting to locate the Veteran's service medical and personnel records constitute a "reasonably exhaustive search" of all available options. See Dixon v. Derwinski, 3 Vet. App. 261, 263 (1992). 

Where service records are missing, the "heightened duty" discussed in the case of O'Hare does not include instituting a presumption that the missing service records would, if they still existed, necessarily support the appellant's claim. Case law does not establish a heightened "benefit of the doubt," only a heightened duty of the Board to consider the applicability of the benefit of the doubt, to assist the claimant in developing the claim, and to explain its decision when a Veteran's medical records have been destroyed. See Ussery v. Brown, 8 Vet. App. 64 (1995). Similarly, the case law does not lower the legal standard for proving a claim, but rather increases the Board's obligation to evaluate and discuss in its decision all of the evidence that may be favorable to a Veteran. Russo v. Brown, 9 Vet. App. 46 (1996). While it is unfortunate that the appellant's service records are unavailable, the appeal must be decided on the evidence of record.

VA and private treatment records have also been associated with the claims file. The Veteran testified at the June 2007 Board hearing that he sought private treatment from a Dr. C in approximately 1959. He further stated that Dr. C is now deceased, and the records are unavailable. The RO sent the Veteran a letter in August 2012 indicating what private medical records it had obtained, and requesting that the Veteran identify any outstanding records to be obtained. The Veteran responded in August 2012 that all his remaining medical records are at the VAMC in Durham, NC. Under these circumstances, the Board finds that VA has fulfilled its duty to attempt to obtain the Veteran's private treatment records, and no further action in this regard is required. With regard to VA treatment records, the Veteran stated in his June 2004 claim that the Durham VA Medical Center (VAMC) would have his treatment records from 1965 to the present. A request for such records resulted in a response from the VAMC that they do not have records for the time period from January 1965 to September 2003. A Formal Finding of Unavailability for these records was prepared and notice sent to the Veteran in October 2011. Records from Durham VAMC have been obtained of treatment spanning a period from April 2004 to December 2014, and have been associated with the claims file. Accordingly, the Board finds that the duty to assist in locating all potentially relevant treatment records has been met. See 38 C.F.R. § 3.159(c)(2) and (e)(1).

Pursuant to the Board's June 2014 remand directives, the agency of original jurisdiction (AOJ) requested all evidence related to the Veteran's award of social security disability benefits. The Social Security Administration (SSA) National Records Center provided photocopies of the January 1993 SSA decision granting entitlement to SSA disability benefits, as well as the medical evidence on which the decision was based, including private treatment records from 1978 to 1992. As this is in substantial compliance with the Board's remand directives, further remand on this basis is not necessary. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with). 
 
The Veteran has also been provided with VA examinations with regard to his claim for service connection for bilateral hip disability. It is well established that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. 38 C.F.R. § 4.2; Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Finding the prior VA medical opinions provided inadequate, the Board directed in its June 2014 remand that a supplemental medical opinion be provided. The Veteran was provided an additional VA examination in October 2014. The examiner personally examined the Veteran, noted review of the Veteran's paper and electronic claims file and considered and cited to specific lay and medical evidence in providing an opinion and rationale regarding the etiology of the Veteran's bilateral hip disability. Although in November 2015 the Veteran's attorney argued that the examination report did not fully discuss the Veteran's contentions that he suffered from symptoms of a hip disability continuously since discharge from service, the October 2014 examiner acknowledged that the Veteran reported continuing to have bilateral hip pain over the years since a fall and hospitalization in service, and specifically discussed, and acknowledged as competent, the Veteran's reports of limping shortly after and since the in-service injury and his spouse's report of the Veteran having had hip trouble and using a cane since she met him in 1971. The examiner was aware of, and considered this evidence, but found it less probative when considered along with X-ray evidence and the Veteran's reports of a history of falls in 1986 during which he injured his hips. While an examiner may not ignore lay statements of the Veteran unless found to be not-credible by the Board, nothing in the law prevents a medical examiner from basing his opinion on the facts he deems relevant to that opinion. See Dalton v. Nicholson, 21 Vet. App. 23 (2007) (an examiner may not ignore lay statements of the Veteran, unless found by the Board to be not credible); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (an examination report is inadequate when predicated on ignorance of material facts). In this case, the November 2014 VA examiner was aware of the lay evidence, but found the medical evidence of record contradicting such lay evidence to be more probative as to the etiology and timing of onset of the Veteran's bilateral hip disability. As will be discussed further below, the Board too has determined that the lay statements regarding continuous hip symptoms since service lack credibility due to their inconsistency with other evidence of record, and therefore, the adequacy of the examiner's report does not suffer due to reliance on such a finding. The Board therefore finds the opinion adequate for adjudicatory purposes, and finds the provision of the VA medical opinion and examination to be in substantial compliance with the Board's remand directives. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with). 

The available records and medical evidence have been obtained in order to make adequate determinations as to the claim. Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio, 16 Vet. App. at 183. 

II. Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service. 38 U.S.C.A. § 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2015). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

To establish service connection for a disability resulting from a disease or injury incurred in service, or to establish service connection based on aggravation in service of a disease or injury which pre-existed service, there must be (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of incurrence or aggravation of a disease or injury in active service; and (3) competent evidence of a nexus or connection between the current disability and the disease or injury incurred or aggravated in service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). In many cases, medical evidence is required to meet the requirement that the evidence be "competent". However, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303, 309 (2007).

Service connection for certain chronic diseases may be established on a presumptive basis by showing that the disease manifested itself to a degree of 10 percent or more within one year (three years for active tuberculous disease and Hansen's disease; seven years for multiple sclerosis) from the date of separation from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). In such cases, the disease is presumed under the law to have had its onset in service even though there is no evidence of that disease during the period of service. 38 C.F.R. § 3.307(a). The term "chronic disease" refers to those diseases listed under section 1101(3) of the statute and section 3.309(a) of VA regulations. 38 U.S.C.A. § 1101(3); 38 C.F.R. § 3.309(a); Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013). Arthritis (degenerative joint disease) is among the "chronic diseases" enumerated under section 3.309(a).

Where a chronic disease under 3.309(a) is "shown as such in service" ("meaning clearly diagnosed beyond legitimate question," Walker, 708 F.3d at 1339), or in the presumptive period so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). In cases where a chronic disease is "shown as such in service," the Veteran is "relieved of the requirement to show a causal relationship between the condition in service and the condition for which service-connected disability compensation is sought." Walker, 708 F.3d at 1336. Instead, service connection may be granted for subsequent manifestations of the same chronic disease without any evidence of link or connection between the chronic disease shown in service and manifestations of the same disease at a later time. In other words, "there is no 'nexus' requirement for compensation for a chronic disease which was shown in service, so long as there is an absence of intercurrent causes to explain post-service manifestations of the chronic disease." Id.

If evidence of a chronic condition is noted during service or during the presumptive period, but the chronic condition is not "shown to be chronic, or where the diagnosis of chronicity may be legitimately questioned," i.e., "when the fact of chronicity in service is not adequately supported," then a showing of continuity of symptomatology after discharge is required to support a claim for disability compensation for the chronic disease. Proven continuity of symptomatology establishes the link, or nexus, between the current disease and service and serves as the evidentiary tool to confirm the existence of the chronic disease while in service or a presumptive period during which existence in service is presumed." Id. at 1336; 38 C.F.R. § 3.303(b).

Where there is affirmative evidence to the contrary, or evidence to establish that an intercurrent injury or disease which is a recognized cause of any of the diseases or disabilities subject to the presumptions of 38 U.S.C.A. § 1112 has been suffered between the date of separation from service and the onset of any such diseases or disabilities, a presumptive grant of service connection will not be in order. 38 U.S.C.A. § 1113.

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b). When a reasonable doubt arises regarding service origin, such doubt will be resolved in the favor of the claimant. Reasonable doubt is doubt which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. See Gilbert, 1 Vet. App. at 54.

In determining whether statements submitted by a Veteran are credible, the Board may consider their internal consistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. at 711 , aff'd, 78 F.3d 604 (Fed. Cir. 1996) (per curiam) (table); see also Madden v. Brown, 125 F.3d 1447 (Fed Cir. 1997) (holding that the Board has the "authority to discount the weight and probative value of evidence in light of its inherent characteristics in its relationship to other items of evidence"). Further, the Federal Circuit Court has held that, while the absence of contemporaneous medical records does not, in and of itself, render lay testimony not credible, the Board may weigh the absence of contemporaneous records when assessing the credibility of lay evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) ("Nor do we hold that the Board cannot weigh the absence of contemporaneous medical evidence against the lay evidence of record."). Moreover, although the Board cannot reject a claimant's statements merely because he is an interested party, the claimant's interest may affect the credibility of his testimony when considered in light of the other factors. See Cartright v. Derwinski, 2 Vet. App. 24, 25; accord Buchanan, 451 F.3d at 1337 (holding that "the Board, as fact finder, is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself, i.e., because of possible bias . . . .").

III. Analysis

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is not entitled to service connection for degenerative joint disease of the bilateral hips, status post bilateral hip replacements on either a direct or presumptive basis.

The Veteran contends that he has had hip pain and limping since events which occurred during active military service. His description of how events transpired, however, has not been consistent. 

In a June 2004 statement, the Veteran wrote that he suffered from osteoarthritis which was made worse during military service because he suffered from unequal leg length which was not discovered during active duty. He stated that he was "subject to ongoing military medical oversight throughout... active duty," but that his unequal leg length was not discovered, and therefore, his leg condition was not diagnosed and no corrective or ameliorative actions were provided. He further stated that, "because the military doctors failed to diagnose the condition, and told [him he was] in fine medical health, [he] was not on notice to seek medical treatment upon [his] release from active duty." The Veteran attributed strain on his joints to duties during military service loading heavy gear and supplies onto trucks in extreme temperatures and marching three to four miles on a daily basis carrying heavy gear without the use of corrective shoes or other corrective medical treatment. He stated that other than uneven leg length, he did not suffer from other conditions that medical professionals identify as aggravating factors for osteoarthritis. In particular, he stated that he did not suffer from any post-traumatic injuries. Finally, he wrote that his problems did not become obvious until many years after service.

For the first time, in a December 2005 statement made as part of his Notice of Disagreement, the Veteran stated that he was treated for bilateral hip problems during service around August 1957, was hospitalized overnight while in Korea, and was given a profile for light duty for two to three months. During his June 2007 Board hearing, the Veteran testified that he fell down a mountain, began limping two days later, then was hospitalized for a few days then put on light duty for the rest of the time he was in Korea. The Veteran further stated that he has had hip problems ever since service, has used either a cane or walking stick since he got out, and testified that he sought treatment shortly after his release from service, but the records were not available because the private physician was deceased. His wife testified that the Veteran had been limping and walking with a cane when she first met him in 1971, and the Veteran told her he started using a cane when he got out of service. The Veteran essentially related a similar scenario at each of his VA examinations, in May 2010, October 2013 and October 2014.
 
The Veteran's alternative descriptions of events are incompatible. Either the Veteran thought he was in fine medical health during and upon release from service and was therefore not on notice to seek medical treatment upon release from active duty, or he was hospitalized and began limping during service and sought treatment shortly after exiting service because continued to suffer from hip problems. 

Pursuant to the Board's June 2012 remand directives, the Veteran's SSA records were requested and associated with the file. The records produced include private medical records spanning from 1978 to 1992, and contain no mention of any sort of injury during military service or reference to the Veteran using an assistive device such as a cane or walking stick. A September 1978 record notes that the Veteran's physical examination was within normal limits and he was in good health. An August 1979 record notes that the Veteran denied previous hospitalizations or allergies. September 1990 and November 1992 records note left knee pain and minor degenerative changes in the right shoulder, respectively, and the Veteran reported to SSA that he was first prescribed arthritis medication in May 1992. Also among this evidence is an August 1992 private treatment progress note indicating that the Veteran was seen for hip and back pain, gave a history of "taking a couple of falls in NYC 6 years ago" and doing well until he began experiencing pain during the 1-2 months leading up to the August 1992 visit. The Veteran was assessed with "chronic hip back pain" and the report of a pelvic x-ray performed the same day showed an intact bony pelvis, with hip joints well maintained, and no focal bony or soft tissue abnormality. 

An August 2001 private progress note documented the Veteran's complaint of bilateral hip pain, and noted that there was "no known injury." Radiological imaging performed for the bilateral hips showed mild osteoarthritis bilaterally with some cortical cyst formation at the hips, left greater than right.

VA treatment records dated April and May 2004 from the Durham VAMC note that the Veteran reported severe hip pain for more than one year, with history of pain for 10 years, and with falls secondary to pain. At this point, it was noted that he ambulated with a cane. 

The evidence of record demonstrates that the Veteran has a current disability for VA service connection purposes of bilateral degenerative joint disease of the bilateral hips, status post bilateral hip replacement. 

When considering the various statements made by the Veteran and his spouse with regard to the onset of the Veteran's hip pain, both in support of the claim for service connection and for the purpose of treatment throughout the years, the Board finds the statements that the Veteran has experienced hip pain since service to lack credibility. The Board finds particularly probative the fact that prior to the filing of the claim for service connection, the Veteran's treatment records contain no mention of an injury during military service or ongoing pain since service, let alone since an accident falling down a mountain during service, and the Veteran specifically denied knowledge of an injury in August 2001. More specifically, counter to the Veteran's later assertions that he suffered a fall down a mountain during service which was so severe it required overnight hospitalization and subsequent light duty for 2-3 months until separation from service, the Veteran denied prior hospitalization at a private medical appointment in August 1972 and only referenced falling "six years prior" when discussing possible injuries relating to hip pain in August 1992, but made no mention of any in-service injury or hip symptoms suffered since service. The Board notes that the Veteran would be particularly inclined toward truthfulness and forthcomingness in his statements to treatment providers, in order to facilitate productive treatment. See Fed. R. Evid. 803 (4) (noting that statements made to physicians for the purposes of diagnosis and treatment are exceptionally trustworthy, and not excluded by the hearsay rule because the declarant has a strong motive to tell the truth in order to receive proper care); Rucker v. Brown, 10 Vet. App. 67, 73 (1997) ("[R]ecourse to the [Federal] Rules [of Evidence] is appropriate where they will assist in the articulation of the Board's reasons.")). 

Additionally, the Board notes that prior to filing his claim in June 2004, the Veteran had no financial incentive to voice a link between his bilateral hip disability and service, and it is only after the initial denial of this claim that any mention was made of an in-service injury or experience of continuous hip symptoms since service. The Board finds the pre-claim statements constitute the more-credible evidence, as they were made in the absence of the post-claim interest. See Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (holding that interest in the outcome of a proceeding may affect the credibility of testimony). Further, as the August 1972 and August 1992 statements made by the Veteran to his treatment providers were made nearer in time to military service than the statements made after filing his claim for entitlement to service connection, the Board also finds that the earlier statements are less-likely to have been influenced by the passage of time and faultiness of memory. See Seng v. Holder, 584 F.3d 13, 19 (1st Cir. 2009) (notwithstanding the declarant's intent to speak the truth, statement may lack credibility because of faulty memory) [cited by C.J. Kasold in Wohlwend v. Shinseki, No. 08-356, 2014 WL 1931182 at *3 (May 15, 2014)]. 
 
Finally, while the Board does not consider the lack of service treatment or personnel records to constitute evidence against the Veteran's claim, as indeed these records have been found to be "fire-related," it does find the complete lack of any mention of hip disorders in approximately 14-years' worth of private medical records submitted to SSA (until complaints of hip pain in August 1992) to be particularly persuasive, as one would expect symptoms severe enough to require the use of a cane or walking stick to have been noted at some point in these records. The Board therefore finds that a preponderance of the competent and credible evidence of record does not indicate that the Veteran suffered an injury to the hips leading to hospitalization during service or that he has suffered from continuous hip problems since separation from service.
 
The Board recognizes the claimant's assertion that the Board's August 2007 decision conceded that the Veteran provided credible testimony that he had suffered continuous symptoms of hip disability since service. However, as that decision was subsequently vacated by the May 2009 Court order, any finding contained therein is not binding in this case. Further, since the August 2007 decision, additional evidence has been associated with the record, specifically, the medical records obtained from SSA, which contradicts and calls into question the credibility of the Veteran's testimony and other lay statements regarding continuous hip symptoms since service. Therefore, the Board's current credibility findings are not found to be irreconcilable with those made in the now-vacated August 2007 Board decision. 

Even were the Board to find that the weight of the evidence supported the Veteran's description of an in-service hip injury with resultant pain since that time, a preponderance of the evidence weighs against a finding that the Veteran's current degenerative joint disease of the bilateral hips, status post bilateral hip replacements, is etiologically related to military service.
 
The Veteran was provided with a VA examination in October 2014, following what were found to be inadequate VA medical opinions provided in May 2010 and October 2013. The October 2014 examiner noted the Veteran's report of falling while coming down a mountain with subsequent hospitalization and light duty, and the Veteran's wife's report that the Veteran had used a cane since at least 1971, but found that these assertions were not supported by the medical evidence of record. The examiner cited to the August 1992 Social Security disability evaluation including the negative X-ray of the hips, and stated that the in-service event claimed to be of great significance by the Veteran should have resulted in degenerative joint disease of the hips on the August 1992 X-ray. He also noted that in the same Social Security evaluation, the Veteran related having experienced two falls in New York City in 1986 which injured and caused pain in his hips. Considering this history and described events, the October 2014 examiner stated that the Veteran's degenerative joint disease of the hips more likely than not had its onset from and was etiologically related to the two falls that occurred in 1986. He also stated that the degenerative joint disease was less likely than not incurred or caused by the claimed in-service injury or event, citing to the August 2001 progress note first diagnosing degenerative joint disease by X-rays, the August 1992 records reporting falls in 1986, and the April 2004 VA treatment record where the Veteran reported hip pain with an onset of 10 years earlier. 

Although the October 2014 VA examiner did not specifically address the Veteran's initial contention that an undiagnosed leg length disparity, loading heavy gear and supplies onto trucks in extreme temperatures, and marching three to four miles on a daily basis carrying heavy gear without the use of corrective shoes led to excessive joint strain contributing to his current hip disorder, the Board finds the examiner's conclusion that the degenerative joint disease of the bilateral hips was more likely etiologically related to falls in 1986 than any incident of service to sufficiently cover this scenario. The Board notes that the October 2013 VA examination report, despite the inadequacy of the overarching etiological opinion, nevertheless includes probative evidence regarding the effects of military service on the Veteran's hips. The October 2013 VA examiner stated that although a one inch leg length difference was noted after the first hip replacement in 2004, a one inch leg length difference is of no clinical significance, as a difference of at least 2 inches is necessary to cause any gait related problems. The October 2013 VA examiner also stated that carrying heavy objects over years is not noted to cause or aggravate development of degenerative joint disease of the hips. Although that examiner's overall opinion was found inadequate because of an inaccurate statement regarding the Veteran's length of service, the aforementioned statements of general medical principles were not negatively affected by any mistake regarding this particular Veteran's service. Therefore, these statements remain probative, and reliance upon them is not error. 

The Board recognizes that an October 2006 VA orthopedic history and physical record includes documentation of the Veteran's reported history of being a gunner in the military and beginning to limp in 1956 with progressive hip pain over the years. The physician's assistant also noted that the Veteran had a left total hip arthroplasty in 2004, and has a shorter right lower extremity because of it and wears a buildup on the right shoe to compensate. An addendum report states that Dr. V, the Orthopaedic Surgery Resident, "felt it was possible" that since the Veteran began limping during military service and had a medical evaluation that it could be possible that his osteoarthritis of the right hip could be related to a service-connected condition. Although this opinion was not discussed by the VA examiners, as the Board finds that the record is of limited, if any, probative value, the adequacy of the VA examiners' opinions do not suffer from such omission. As an initial matter, the October 2006 opinion that "it was possible" that the osteoarthritis of the right hip "could be related" to a service-connected condition is speculative in nature. An opinion is of limited probative value when it is phrased in vague terms. See Bostain v. West, 11 Vet. App. 124, 127-28, quoting Obert v. Brown, 5 Vet. App. 30, 33 (1993) (medical opinion expressed in terms of "may" also implies "may or may not" and is too speculative to establish medical nexus); Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992) ("may or may not" language by a physician is too speculative). Further, as discussed above, the Board has found the statements that the Veteran was seen for his hip during service, began limping at that time, and has experienced hip pain since service to lack credibility. The medical records from SSA documenting medical treatment devoid of any mention of hip complaints until the early 1990's were also not obtained by VA until 2014, and therefore were not available for consideration by Dr. V in rendering his opinion. As the October 2006 opinion is based on an inaccurate factual premise, a medical history provided by the Veteran which has been rejected by the Board, it is found to have no probative value. See, e.g., Swann v. Brown, 5 Vet. App. 229, 233 (1993) (generally observing that a medical opinion premised upon an unsubstantiated account is of no probative value, and does not serve to verify the occurrences described); Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (the Board is not bound to accept a physician's opinion when it is based exclusively on the recitations of a claimant that have been previously rejected). 
 
The Board finds that the report of the October 2014 VA examiner should be accorded significant probative weight, as it was based on full consideration of the Veteran's documented history and assertions, as well as the medical evidence contained within the Veteran's SSA records, and is further supported by a clearly-stated rationale. See, e.g., Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)) and Guerrieri v. Brown, 4 Vet. App. 467, 470-471 (1993) (holding that the credibility and weight to be attached to medical opinions are within the province of the Board). The Board also finds persuasive the statements of medical principles made by the October 2013 VA examiner. Although the Veteran and his spouse are competent to provide evidence with regard to the Veteran's use of a cane and his experienced symptoms, as noted above, the Board finds their statements regarding continuous symptoms since service not credible when considered alongside the medical evidence of record which includes statements made by the Veteran placing the onset of his hip pain more than 25 years post-service. See Caluza v. Brown, 7 Vet. App. at 711, aff'd, 78 F.3d 604 (Fed. Cir. 1996) (per curiam) (table); see also Madden v. Brown, 125 F.3d 1447 (Fed Cir. 1997) (holding that the Board has the "authority to discount the weight and probative value of evidence in light of its inherent characteristics in its relationship to other items of evidence"). Additionally, because degenerative joint disease is not a simple condition whose precise etiology can be determined by a lay person, the Veteran is not competent to provide an opinion as to the underlying cause for his current disability. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

The medical evidence of record reflects the presence of degenerative joint disease of the bilateral hips, first documented by X-ray imaging in August 2001, more than 40 years after the Veteran's period of active service. Prior X-rays in August 1992 demonstrated well maintained hip joints and no focal bony or soft tissue abnormality. Even were the Board to have found the lay statements regarding a continuity of hip symptoms since service to be credible, this affirmative evidence that the Veteran had not manifest arthritis of the hips as late as August 1992, in addition to evidence that the Veteran suffered intercurrent falls resulting in hip pain during the mid-to-late 1980's, is sufficient to rebut the presumption of service connection. See 38 U.S.C.A. § 1113.

The weight of the competent and credible evidence, both lay and medical, is found to be against a finding that the current hip disability arose during service or is etiologically related to an injury or event which occurred during military service. Therefore, service connection for degenerative joint disease of the bilateral hips is not warranted on a direct basis. 38 U.S.C.A. §§ 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.304. As the medical evidence of record, particularly X-ray evidence, demonstrates that the Veteran had well-maintained hip joints and no focal bony or soft tissue abnormality in August 1992, approximately 35 years post-service, the evidence also does not indicate that the Veteran's degenerative joint disease of the bilateral hips manifest to a compensable degree within one year of military service. Service connection for degenerative joint disease of the bilateral hips is therefore also not warranted on a presumptive basis. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307(a)(3), 3.309(a).
 
For the foregoing reasons, the Board finds that the claim for service connection for degenerative joint disease of the bilateral hips, status post bilateral hip replacement must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the competent, probative evidence is against the claim, there is no reasonable doubt to be resolved, and that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 


 (CONTINUED ON NEXT PAGE)



ORDER


Service connection for degenerative joint disease of the bilateral hips, status post bilateral hip replacement, is denied.




____________________________________________
KATHLEEN K. GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs