Citation Nr: 1829332 
Decision Date: 05/24/18 Archive Date: 06/12/18

DOCKET NO. 10-47 204A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to a rating in excess of 50 percent for post-traumatic stress disorder (PTSD) prior to July 2012.

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) prior to July 2012.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

K. D. Cross, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1967 to November 1974. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from a March 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, the Republic of Puerto Rico. Jurisdiction currently resides with the RO in Winston-Salem, North Carolina. 

In December 2016, the Board denied a rating in excess of 50 percent for PTSD and a TDIU. The Veteran appealed to the United States Court of Appeals for Veterans Claims. In January 2018, the Court granted a Joint Motion for Remand, vacated the portion of the December 2016 decision that denied these claims prior to July 2012, and remanded the case to the Board. 

The issue of entitlement to TDIU is REMANDED to the Agency of Original Jurisdiction.


FINDINGS OF FACT

1. Prior to July 2012, the Veteran's PTSD was productive of occupational and social impairment that most nearly approximates deficiencies in most areas.

2. Prior to July 2012, the Veteran's service-connected disabilities did not render him unable to secure or follow a substantially gainful occupation.



CONCLUSIONS OF LAW

1. The criteria for a 70 percent, but no higher, for PTSD prior to July 2012 have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2017).

2. The criteria for entitlement to a TDIU prior to July 2012 have not been met. 38 U.S.C.A. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.341, 4.2, 4.3, 4.16 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify and Assist

VA has duties to notify and assist claimants in substantiating claims for VA benefits. 38 U.S.C. §§ 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 (2017). Neither the Veteran nor representative has raised any issues with the duty to notify or duty to assist. The Board's obligation to read filings in a liberal manner does not require the Board to search the record and address procedural arguments when the Veteran does not raise them before the Board. Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015); Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016). 

Increased Rating

Disability ratings are determined by the application of the VA's Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2017). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during service and their residual conditions in civil occupations. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.321(a), 4.1 (2017).

It is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom are sufficient; and above all, a coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21 (2017).

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2017).

Different ratings may be assigned for separate periods of time if distinct periods are shown by the competent evidence of record during the pendency of the appeal that warrants different ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Whether lay evidence is competent and sufficient in a particular case is an issue of fact and that lay evidence can be competent and sufficient to establish a diagnosis when (1) a layperson is competent to identify the medical condition (noting that sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

The Board has authority to discount the weight and probity of evidence in light of its own inherent characteristics and its relationship to other items of evidence. Madden v. Gober, 125 F.3d 1477 (Fed. Cir. 1997). VA may favor one medical opinion over another provided that VA offers an adequate basis for doing so. Owens v. Brown, 7 Vet. App. 429 (1995). 

Diagnostic Code 9411 is used to rate PTSD and other mental disorders and applies the General Rating Formula for Mental Disorders. A 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411 (2017).

A 70 percent rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: Suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. 38 C.F.R. § 4.130, Diagnostic Code 9411 (2017).

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: Gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, Diagnostic Code 9411 (2017).

That portion of VA's Schedule for Rating Disabilities that addresses service-connected psychiatric disabilities was based on the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, (DSM-IV) prior to a change effective August 4, 2014. 38 C.F.R. § 4.130 (2017). The regulation has been changed to designate the current DSM, the DSM-5. However, that change does not apply to this claim, which was pending at the time of the change. 

The DSM-IV contains a Global Assessment of Functioning (GAF) scale, with scores ranging between 0 and 100, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health-illness. Higher scores correspond to better functioning of the individual. This case involves assignment of GAF scores and those assignments are relevant to the Veteran's level of impairment due to his PTSD, but not dispositive of the rating warranted.

In evaluating the evidence, the Board also considers the GAF scores that clinicians have assigned. The GAF is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (DSM-IV); Carpenter v. Brown, 8 Vet. App. 240 (1995). A GAF score of 61 to 70 indicates some mild symptoms, such as depressed mood and mild insomnia, or some difficulty in social, occupational, or school functioning, but generally reflects that a person is functioning pretty well, and has some meaningful interpersonal relationships. A GAF score of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. A GAF score of 41 to 50 indicates there are serious symptoms (e.g., suicidal ideation, severe obsessional rituals), or any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job). The Board notes that an examiner's classification of the level of psychiatric impairment, by words or by a GAF score, is to be considered, but is not determinative in and of itself, of the percentage rating to be assigned.

The Board observes that to adequately evaluate and assign the appropriate disability rating to the Veteran's service-connected psychiatric disability, the Board must analyze the evidence as a whole, including the Veteran's GAF scores and the enumerated factors listed in the VA's Schedule for Rating Disabilities. Mauerhan v. Principi, 16 Vet. App. 436 (2002) (rating specialist is to consider all symptoms of a claimant's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the DSM-IV).

The Veteran asserts that prior to July 2012, his PTSD manifested to a degree worse than that contemplated by the assigned 50 percent rating, and he seeks a staged rating for this time period.

Initially, the Board observes that the Veteran's October 2014 and May 2015 medical records also reflect a diagnosis of alcohol abuse, in remission. However, the Board is precluded from differentiating between the symptoms of the Veteran's PTSD and his other psychiatric condition in the absence of clinical evidence that clearly shows such a distinction. See Mittleider v. West, 11 Vet. App. 1818, 182 (1998). There is no such medical evidence of record to show a distinction between the Veteran's diagnosed PTSD and alcohol abuse. As such, symptoms related to the Veteran's alcohol abuse will be considered in his claim for increased rating for PTSD. See Mittleider v. West, 11 Vet. App. 1818, 182 (1998); and see also 38 C.F.R. § 3.102.

A September 2008 VA mental health consult note shows that the Veteran reported symptoms of decreased motivation, memory and concentration impairment, nightmares, irritability, and social isolation. Although previously employed as a mortgage underwriter, the Veteran indicated he was not working. Specifically, he reported that the business of underwriting mortgages was slowing and becoming more corrupt and that he wanted to get out of the industry. The Veteran reported that his symptoms caused social and occupational impairment that made maintaining employment difficult and relationships even harder. His symptoms also included frequent angry outburst, isolation, being judgmental and intolerant of other people, guilt, worthlessness, restlessness and anxiety. The report indicates that the Veteran had suicidal/homicidal ideation, but had never acknowledged them. No abnormalities were observed on the mental status examination. The Veteran was assigned a GAF scaled score of 80. Subsequent VA treatment records show continued reports of irritability, decreased motivation, and feelings of social isolation.

During a February 2009 VA examination, the Veteran reported symptoms included social isolation, detachment from others, angry outburst, irritability, hypervigilance, cognitive deficits, nightmares, intrusive thoughts, depressed mood, diminished interest, concentration and memory problems, and difficulty with relationships. The Veteran also reported that he was terminated from his last job for challenging his supervisor about the unethical practices within the industry. He described his relationship with his supervisor as "tense" at times and the relationships with his coworkers as fair. There was indication of some passive thoughts of death in the past, but no history of intent or plan. He reported occasional tension within his current marriage, but endorsed having a good relationship with his wife and children.

The associated mental status examination revealed no impairments in orientation appearance, hygiene, or behavior. The Veteran was noted as exhibiting symptoms of flattened affect, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships and anxiety, depression, and cognitive interference. His depressed mood most likely occurred nearly continuously and affected his ability to function independently. The examiner noted impairments in the Veteran's attention and focus, as well as the Veteran's report of difficulty focusing on daily activities; the examination results revealed his attention and concentration were grossly intact. The Veteran was assigned a GAF scaled score of 50. The examiner opined that the Veteran's current psychiatric symptoms cause occupational and social impairment with reduced reliability and productivity. 

VA medical records from 2008 to 2010 show additional reports of psychiatric symptomatology and psychiatric treatment. An October 2008 mental health note shows that the Veteran reported extreme depression to the point of unhappiness and not caring about anything. The Veteran reported "fleeting suicidal thoughts" when the depression got really bad, but denied having these thought in the past several months prior to the examination. In January 2009, he indicated that he was learning to cope with his PTSD symptoms; his mood was less depressed, anxious, and irritable. A February 2009 mental health note indicates that as of January 2009, the Veteran experienced less nightmares, had no suicidal thoughts, and had diminished flashbacks. Irritability levels had reduced with better temper control. A March 2009 mental health note indicated that the Veteran had a more stable mood and was better managing his temper. The Veteran was alert, oriented to place, person and time. There were no suicidal ideations, auditory hallucinations, delusions, thought disorder, visual hallucinations, or homicidal ideations. There was an indication of paranoid ideations. The Veteran exhibited good impulse control and judgment. 

In a May 2009 mental health note, the Veteran reported wanting to be isolated and withdrawn. He reported feeling that life is not worth living, but denied suicidal thoughts. The Veteran had become more irritable and less tolerant of being in crowds and closed in rooms. The Veteran was alert, oriented to place, person and time. There were no suicidal ideations, auditory hallucinations, delusions, thought disorder, visual hallucinations, or homicidal ideations. There was an indication of paranoid ideations. 

An August 2009 treatment record shows that the Veteran reported "feeling better" and he had "more energy" with less irritability and improved sleep. In September 2009, the Veteran submitted correspondence detailing his employment history. The Veteran asserted that his symptoms including depression, an inability to engage with people, and an inability to connect with people during interviews which resulted in his unemployability. In October 2010 he was easily irritated which resulted in a need to isolate himself from others daily. The Veteran reported doing volunteer work in order to keep his mind off his PTSD. The next VA treatment records begin in 2012.

After careful review of the evidence, and resolving all doubt in the Veteran's favor, the Board finds that a 70 percent rating is warranted for the psychiatric disability prior to July 2012. The medical and lay evidence from this date forward reflects that the Veteran's psychiatric disability has more nearly approximated deficiencies in most areas than reduced productivity and reliability during this period on appeal. Evidence of record supports that the Veteran's symptoms included passive suicidal thoughts without intent or plan, near-continuous depression, anxiety, irritability, angry outbursts, impaired concentration and memory, social isolation, and difficulty connecting or engaging with other people.

The Board acknowledges the February 2009 VA examiner's conclusion that the Veteran's PTSD resulted in occupational and social impairment with reduced reliability and productivity. However, the examiner also identified symptoms that have a more serious effect. The Board further notes the Veteran's GAF scores during this time period ranged from 50 to 80, which is indicative of symptoms ranging from mild to serious impairment in social and occupational functioning. Although GAF scores are important in evaluating mental disorders, the Board must consider all the pertinent evidence of record and set forth a decision based on the totality of the evidence in accordance with all applicable legal criteria. See Carpenter, 8 Vet. App. at 242. The preponderance of the evidence, in particular the medical records reflecting the psychiatric treatment and the credible lay statements from the Veteran, supports a finding that a 70 percent rating is warranted prior to July 2012.

At no point during the period on appeal has the Veteran's PTSD symptomatology more nearly approximated the criteria for a rating in excess of 70 percent. As noted above, a 100 percent rating requires total social and occupational impairment; however, the Board finds that this level of occupational and social impairment has not been shown at any time during the period on appeal. Although not dispositive, the evidence of record does not show that the Veteran's PTSD was been manifested by such symptoms as gross impairment in thought processes or communication, persistent delusions or hallucinations, disorientation to time or place, or memory loss for names of close relatives, or his own name. He did not endorse having episodes of violence and was not deemed to be in persistent danger of hurting himself or others. On all psychiatric evaluations and treatment sessions, the Veteran presented with adequate hygiene and displayed appropriate behavior. Moreover, the evidence indicates that the Veteran was able to function independently, perform activities of daily living, and manage his own finances. He maintained positive relationships with his family members and engaged in volunteer activities to cope with his symptoms. No medical professional ever opined, and the evidence does not otherwise show that the disability resulted in total social and occupational impairment. Despite significant difficulties, the evidence does not show that the Veteran's PTSD was of such severity as to warrant a rating greater than the 70 percent rating assigned herein. See Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114 (Fed. Cir. 2013) (holding that a veteran "may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration"). For these reasons, the Board finds that a rating of 70 percent, and no more, is warranted prior to July 2012.

TDIU

The Veteran reports that his service-connected PTSD prevented him from securing and following any substantially gainful employment prior to July 2012. 

Total disability means that there is present any impairment of mind or body sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. §§ 3.340, 4.15 (2017). A substantially gainful occupation has been defined as "employment at which non-disabled individuals earn their livelihood with earnings comparable to the particular occupation in the community where the Veteran resides." M21-1 VA Adjudication Procedure Manual, Part IV.ii.2.F.1.c. (Updated September 24, 2015). It also has been defined as "an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the Veteran actually works and without regard to the Veteran's earned annual income." Faust v. West, 13 Vet. App. 342 (2000). Marginal employment shall not be considered substantially gainful employment. Substantially gainful employment is defined as work that is more than marginal, which permits the individual to earn a "living wage." Id. Marginal employment is defined as an amount of earned annual income that does not exceed the poverty threshold determined by the Census Bureau. 38 C.F.R. § 4.16(a) (2017). 

When jobs are not realistically within his physical and mental capabilities, a veteran is determined unable to engage in a substantially gainful occupation. Moore v. Derwinski, 1 Vet. App. 356 (1991). In making this determination, consideration may be given to factors such as the Veteran's level of education, special training, and previous work experience, but not to age or impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19 (2017); Van Hoose v. Brown, 4 Vet. App. 361 (1993). 

The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A disability rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose, 4 Vet. App. at 363 (citing 38 C.F.R. §§ 4.1, 4.15).

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities provided that if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. For the purpose of one 60 percent or one 40 percent disability in combination, disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. § 4.16(a) (2017).
 
The Board notes that the ultimate question of whether a Veteran is capable of substantially gainful employment is not a medical one; that determination is for the adjudicator. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). Thus, the VA examiners' conclusions are not dispositive. However, the observations of the examiners regarding functional impairment due to the service-connected disability go to the question of physical or mental limitations that may impact his ability to obtain and maintain employment.

For the period prior to July 2012, service connection has been awarded for tinnitus, rated as 10 percent disabling; for bilateral hearing loss, rated as noncompensable; and for ischemic heart disease, rated as 10 percent disabling. As determined above, a 70 percent rating has been assigned for the Veteran's PTSD prior to July 2012. Thus, the Veteran's combined disability rating prior to July 2012 meets the schedular criteria for consideration of a TDIU under 38 C.F.R. § 4.16(a). 

The evidence reflects that the Veteran completed two years of college and engaged in several types of employment post-service. In a 2009 statement, the Veteran reported having worked as an owner and manager of restaurants and as a mortgage banker. Evidence of record indicates that the Veteran worked as a loan officer until July 2005; his former employer did not provide the reason why he left this position. On his September 2009 VA TDIU application, the Veteran indicated that he was still applying for jobs.

The Veteran essentially contends that he was unable to obtain substantially gainful employment prior to July 2012 due to his service-connected PTSD. As described above, he contends that his PTSD symptoms, to include social withdrawal and isolation, memory and concentration problems, and conflicts with the industry practices for mortgage lending and his last supervisor, prevented him from working. He also reports that his depression and an inability to engage with people or connect with others during interviews resulted in his unemployability. 

As for the Veteran's other service-connected disability, the medical evidence reflects treatment for the disorders but does not indicate that they impact his employability. Notably, on a February 2012 Disability Benefits Questionnaire for the Veteran's IHD, the examiner stated that the impact of the Veteran's cardiac disability on his ability to work was unknown. 

The preponderance of the evidence does not show total impairment so severe as to prevent the Veteran from securing and maintaining employment. Instead, the probative evidence of record is against a finding that the Veteran was unemployable due to his service-connected disabilities, primarily his service-connected PTSD. As previously described, the objective evidence does not show any gross impairments in thinking, communication, or orientation that would preclude his employability. While his symptoms undoubtedly resulted in feelings of social isolation, withdrawal, and difficulty interacting with others, there is no evidence indicating he was unable to function appropriately in an occupational setting, as his interactions with all medical professionals were appropriate, he maintained good relationships with his family, and had a history of at least "fair" relationships with his former coworkers. Throughout the appeal period, he reported being better able to control his irritability and there is no indication of other symptoms, such as impaired impulse control or judgment, that suggests he was unable to function independently and appropriately within a work setting. Although he left his last place of employment due to conflicts with his supervisor over unethical practices in the mortgage lending industry, there is no evidence indicating that his PTSD prevented him from securing employment in other industries. Indeed, the Veteran reported having previously worked in other industries and in other capacities, which indicates that his education and work experience would have been transferrable to other types of employment. The Veteran, himself, reported that he engaged in volunteer work in order to better deal with his PTSD symptomatology, thus indicating that he performed work-like tasks during this time period. 

The Board considers the Veteran's assertions that he was unable to work prior to July 2012 as a result of his service-connected PTSD and recognizes that it must analyze the competency, credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995), affd per curiam, 78 F.3d 604 (Fed. Cir.1996) (table); Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994). In this regard, the Board finds that the Veteran is competent to report his psychiatric symptoms. Although these statements are competent, they are nonetheless inconsistent with the
most probative evidence of record, which does not show the Veteran is unemployable solely due to his service-connected PTSD. As such, the Board finds that the Veteran's assertions of unemployability are outweighed by the other, more probative evidence of record, which indicates that his service-connected PTSD did not preclude him from obtaining substantially gainful employment. 

As the evidence fails to persuasively establish that the Veteran's service-connected disabilities, particularly his PTSD, precluded substantially gainful employment, the Board finds that a TDIU for the period prior to July 2012 is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim for a TDIU, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.


ORDER

A rating in excess of 70 percent for PTSD prior to July 2012 is granted.

Entitlement to TDIU prior to July 2012 is denied.





____________________________________________
DELYVONNE M. WHITEHEAD
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs