﻿Citation Nr: 18142040
Decision Date: 10/12/18 Archive Date: 10/12/18

DOCKET NO. 16-20 830
DATE: October 12, 2018
ORDER
Entitlement to an initial rating in excess of 10 percent for left knee chondromalacia is denied.
Entitlement to an initial rating in excess of 10 percent for right knee chondromalacia is denied.
Entitlement to an initial compensable rating of 10 percent for hypertension, prior to December 6, 2016, is denied
Entitlement to a rating in excess of 10 percent from December 6, 2016, for hypertension, is denied.
Entitlement to an initial rating in excess of 30 percent for an acquired psychiatric disorder, to include post-traumatic stress disorder, major depression, and generalized anxiety disorder (PTSD), prior to December 6, 2016, is denied.
Entitlement to a rating in excess of 70 percent from December 6, 2016, for PTSD, is denied.
FINDINGS OF FACT
1. The Veteran’s left knee disability has not been limited in flexion to 45 degrees or less at any time during the appeal period. 
2. The Veteran’s right knee disability has not been limited in flexion to 45 degrees or less at any time during the appeal period.
3. Prior to December 6, 2016, the Veteran’s systolic blood pressure was not predominantly 160 or more, nor was his diastolic pressure predominantly 100 or more; moreover, his history of diastolic pressure was not 100 or more.
4. Since December 6, 2016, the Veteran’s diastolic pressure was not predominantly 110 or more and his systolic pressure was not predominantly 200 or more.
5. Prior to December 6, 2016, the Veteran’s PTSD was characterized by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks; reduced reliability and productivity have not been shown. 
6. For the period from December 6, 2016, the Veteran’s PTSD has been characterized by occupational and social impairment, with deficiencies in most areas; total occupational and social impairment has not been shown.
CONCLUSIONS OF LAW
1. The criteria for entitlement to an initial rating in excess of 10 percent for left knee chondromalacia have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5257.
2. The criteria for entitlement to an initial rating in excess of 10 percent for right knee chondromalacia have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5257.
3. The criteria for entitlement to an initial compensable rating of 10 percent for hypertension, prior to December 6, 2016, have not been met. 38 U.S.C. § § 1155, 5107; 38 C.F.R. § 4.104, Diagnostic Code (DC) 7101.
4. The criteria for entitlement to a rating in excess of 10 percent from December 6, 2016, for hypertension, have not been met. 38 U.S.C. § § 1155, 5107; 38 C.F.R. § 4.104, Diagnostic Code (DC) 7101.
5. The criteria for entitlement to an initial rating in excess of 30 percent for an acquired psychiatric disorder, to include post-traumatic stress disorder, major depression, and generalized anxiety disorder (PTSD), prior to December 6, 2016, have not been met. 38 U.S.C. §§ 1110, 1155; 38 C.F.R. §§ 4.1, 4.2, 4.6, 4.7, 4.126, 4.130, Diagnostic Code 9411.
6. The criteria for entitlement to a rating in excess of 70 percent from December 6, 2016, for PTSD, have not been met. 38 U.S.C. §§ 1110, 1155; 38 C.F.R. §§ 4.1, 4.2, 4.6, 4.7, 4.126, 4.130, Diagnostic Code 9411. 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from August 1990 to August 2010. 
Increased Rating
Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. See 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. 
Where there is a question as to which of two separate evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that particular rating. 38 C.F.R. § 4.7. When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3.
Where evidence indicates that the degree of disability increased or decreased during appeal period following the assignment of the initial rating, “staged” ratings may be assigned for separate periods of time based on facts found. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.
1. Entitlement to an initial rating in excess of 10 percent for bilateral chondromalacia 
The Veteran seeks ratings in excess of 10 percent for chondromalacia. 
Regarding knee claims, a claimant who has arthritis and instability of the knee may be rated separately under DCs 5003 and 5257 or 5258/5259. See VAOPGCPREC 23-97. For example, when a knee disorder is already rated under DC 5257 (addressing lateral instability), a separate rating may be warranted if the Veteran’s knee also shows limitation of motion which at least meets the criteria for a zero-percent rating under DC 5260 (flexion limited to 60 degrees or less) or 5261 (extension limited to 5 degrees or more). In this case, however, instability has not been shown on examination; accordingly, the Veteran is only rated for painful motion of the knee under 38 C.F.R. § 4.59.
Because neither ankylosis, nor subluxation, dislocated cartilage, removed cartilage, or tibia/fibula impairment or nonunion, malunion, or genu recurvatum have been shown during the period on appeal, DCs 5256-5259 and DCs 5262-63 are not for application here.
Thus, in order to warrant an increased rating based solely on limitation of motion, the evidence must show:
• Limitation of flexion to 30 degrees (a separate 20 percent rating under DC 5260); or 
• Limitation of extension to 15 degrees (20 percent under DC 5261);
See 38 C.F.R. § 4.71a (2017).
The Board determines that ratings in excess of the 10 percent ratings already awarded are not warranted. Limitation of flexion to 30 degrees has not been shown during either examination conducted during the period on appeal. Accordingly, in order to meet the next highest schedular criteria, the Veteran would need to exhibit a limitation of extension to 15 degrees. At his February 2015 examination, the Veteran endorsed worsening pain bilaterally. However, did not exhibit limitation of flexion (again, bilaterally). There was no objective evidence of painful motion or pain with weight-bearing. Further, repetitive use did not diminish the Veteran’s range of motion. While the Veteran endorsed flare-ups, they did not significantly limit functional ability. Muscle strength and joint stability were normal, as were right and left knee extension. In a statement dated April 2015, the Veteran reported swelling at least twice weekly, which he felt was not accounted for in his rating. Further, in his VA Form 9, dated April 2016, the Veteran reported taking daily pain medication and worsening pain. 
At his December 2016 examination, the Veteran reported the use of Aleve and elastic knee braces. While the Veteran reported that his right knee gave out intermittently, no instability was found upon examination. The Veteran showed flare-ups causing functional limitation due to pain and fatigue, as well as swelling. However, flexion was measured at 140 degrees bilaterally, with painful motion at only 120 degrees. No limitation of extension was noted. As in the previous examination, the Veteran’s muscle strength and joint stability were normal. According to the above results, ratings in excess of those already awarded are not warranted.
2. Entitlement to an initial compensable rating for hypertension, prior to December 6, 2016, and a rating in excess of 10 percent after that date 
The Veteran’s hypertension is currently rated as noncompensable prior to December 6, 2016, and at 10 percent from that date, under 38 C.F.R. § 4.104, DC 7101 (addressing hypertension). He seeks higher ratings for each period. Under DC 7101:
• A 10 percent rating is warranted for diastolic pressure predominantly 100 or more, or; systolic pressure predominantly 160 or more, or; minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control.
• A 20 percent rating is warranted for diastolic pressure predominantly 110 or more, or; systolic pressure predominantly 200 or more. 
• A 40 percent rating is warranted for diastolic pressure predominantly 120 or more. 
• A 60 percent rating is warranted for diastolic pressure predominantly 130 or more.
38 C.F.R. § 4.104, DC 7101.
Based on the evidence of record, the Board determines that a 10 percent rating is not warranted for the period prior to December 6, 2016. At his July 2015 C&P examination, the Veteran’s examiner reported that he did not have a history of diastolic blood pressure predominantly 100 mm Hg or more. Further, his systolic pressure was not predominantly 160 mm Hg or more – it was consistently below 160 mm Hg, with an average reading of 131 mm Hg. His diastolic pressure was, on average, measured at 92 mm Hg. The Veteran did not have any other pertinent symptoms related to his hypertension. While the Veteran was on Lisinopril for his blood pressure, there is no indication that the readings were consistently elevated to a compensable level prior to the use of medication. In other words, a history of diastolic pressure predominantly 100 or more prior to the use of medication is not shown. Accordingly, a compensable rating is not warranted for this period.
For the period from December 6, 2016, the Veteran is entitled to a 10 percent rating for hypertension. This rating is appropriate because the Veteran’s diastolic blood pressure was measured at 100 mm Hg, and required continuous medication. See § 4.104, DC 7101. However, a 20 percent rating is not warranted for this period. The results of several readings indicate blood pressure below the 110 diastolic and 200 systolic readings required for a 20 percent rating. 
The Veteran underwent a C&P examination in December 2016, at which his average blood pressure was measured at 140/100. The Veteran mentioned to his examiner that he had not taken his medication in order to show the elevated readings. The examiner noted the lack of a history of a diastolic blood pressure elevation to predominantly 110 or more, and a current average blood pressure reading of 140/100. Throughout these readings, the Veteran never demonstrated diastolic blood pressure of 110 or more or a systolic blood pressure of 200 or more. Importantly, even if he had exhibited those readings on occasion, such a finding would not alter the Board’s conclusion that the Veteran has not demonstrated a predominant diastolic blood pressure of 110 or more or systolic pressure of 200 or more. Therefore, as the Veteran did not exhibit the requirements for a 20 percent rating, a rating in excess of 10 percent is not warranted.
3. Entitlement to an initial rating in excess of 30 percent for an acquired psychiatric disorder, to include post-traumatic stress disorder, major depression, and generalized anxiety disorder (PTSD), prior to December 6, 2016, and a rating in excess of 70 percent from that date
The Veteran is presently service connected for PTSD, to include major depression and generalized anxiety disorder. His disorder is rated as 30 percent disabling for the period prior to December 6, 2016, and 70 percent for the period from that date. As this grant does not represent a total grant of benefits sought on appeal, the claim for increase remains before the Board. AB v. Brown, 6 Vet. App. 35 (1993).
The Veteran’s PTSD is rated under 38 C.F.R. 4.130, Diagnostic Code 9434, which provides the general rating formula for mental disorders. Under the applicable diagnostic criteria, a 30 percent rating is granted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. 4.130, Diagnostic Code 9434 (2017). 
A 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.
A 70 percent rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school family relations, judgment, thinking or mood, due to such symptoms as: suicidal ideations; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of the veteran’s personal appearance and hygiene; difficulty in adapting to stressful circumstances (including in work or work like settings); inability to establish and maintain effective relationships. Id.
In order to warrant the next-higher 100 percent rating, the evidence must show total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene), disorientation to time or place; and/or memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, Diagnostic Code 9434, General Rating Formula for Mental Disorders (2017).
Consideration is given to the frequency, severity, and duration of psychiatric symptoms, the length of remission, and the Veteran’s capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment, rather than solely on the examiner’s assessment of the level of disability at the moment of examination. See 38 C.F.R. § 4.126 (a) (2017). Further, when evaluating the level of disability arising from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely based on social impairment. 38 C.F.R. § 4.126 (b) (2017). It is necessary to evaluate a disability from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2 (2017).
Prior to December 6, 2016
Based on the evidence of record, a rating in excess of 30 percent is not warranted. Specifically, during this period, the record indicates that the Veteran’s symptoms did not rise to the level of occupational and social impairment with reduced reliability and efficiency. 
For example, throughout this period, no deficiency in the Veteran’s appearance and hygiene was noted, and the Board infers that none was present. While the Veteran was tearful on examination, it appears that he was fully oriented. The Veteran’s mood and motivation level does not seem to warrant an increased rating – indeed, panic attacks were not noted during this period. Moreover, the Veteran was found capable of managing his financial affairs and able to function independently. 
While it is true that the Veteran exhibited sleep impairment throughout this period, such symptoms are also contemplated by his current rating under DC 9434. Specifically, the Veteran endorsed chronic sleep impairment to his July 2015 examiner. Sleep disturbances are not uncommon with psychiatric disorders, and any resulting occupational or social impairment is included in the Veteran’s current rating. Similarly, the Veteran’s memory, attention, and cognition has generally been intact and normal for this period. 
During this period, the Veteran’s judgment does not appear to have been impaired as a result of his depressive symptoms. Specifically, the Veteran’s ability to work as a bus driver and to pursue a course of study during this period demonstrates his ability to exercise judgment. At all times during this period the Veteran denied suicidal ideations. Finally, no delusions or hallucinations were shown or reported for this period. Thus, the Veteran’s disability picture does not merit an increased rating.
Based on the symptoms clinically observed, the Veteran has experienced some of the relevant symptoms that might support a rating in excess of 30 percent. For example, he has exhibited difficulty in establishing and maintaining effective work and social relationships. However, in the Board’s view, the criteria for the next-higher 50 percent rating depict a level of impairment, when viewed as a whole, that is more severe than the symptoms displayed by the Veteran. Indeed, many of these objective symptoms, to include obsessional rituals, difficulty understanding complex command, and spatial disorientation, have not been demonstrated.
Next, although the general rating formula provides specific examples of symptoms that may result from various acquired psychiatric disorders, the Board emphasizes that its analysis should not be limited to only these symptoms, but should also consider any other relevant criteria outside of the rating code in order to determine the level of occupational and social impairment. Mauerhan v. Principi, 16 Vet. App. 436, 444 (2002). As such, the Board has also considered the extent to which there are other indications of total occupational and social impairment, such as grossly inappropriate behavior and memory loss, to include social and occupational inadaptability.
In this regard, it is acknowledged that the Veteran’s disorder impacts his social and occupational functioning. Nevertheless, the evidence does not indicate that a rating in excess of 30 percent is warranted. In his July 2015 examination, the Veteran mentioned having been married for twelve years but going through a divorce. Moreover, the Veteran has a history of working as a bus driver; as of his July 2015 examination, he was a full-time student. While the Veteran’s current struggles are unquestionably related to his PTSD, the Board determines that his level of social and occupational impairment is contemplated by the 30 percent rating for this period granted in this decision. 
Given this evidence, the Board determines that the Veteran’s psychiatric symptoms most nearly approximate the symptoms listed for a 30 percent rating. Specifically, his psychiatric disability was primarily manifested by disturbances of mood and sleep. As the frequency, duration and severity of the Veteran’s psychiatric symptoms demonstrate occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks for the period prior to December 6, 2016, a 30 percent evaluation, but no more, is warranted for the Veteran’s PTSD. 38 C.F.R. § 4.130, Diagnostic Code 9434 (2017).
From December 6, 2016
In the period after December 6, 2016, the Veteran’s social and occupational functioning was not affected enough to warrant a rating in excess of 70 percent. Specifically, the Veteran did not demonstrate total occupational and social impairment. 
The Veteran’s December 2016 VA examination report shows a noticeable difference in the Veteran’s presentation. During this period, the Veteran’s symptoms had progressed to the point where he appeared clean and casual, but sad and anxious, with a constricted affect. The Veteran was negative for obsessive-compulsive disorder or bipolar disorder. He endorsed difficulty adapting to stressful circumstances, and intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene. Similarly, the Veteran told his December 2016 examiner of anhedonia and anergia. The Veteran appeared tearful and sweating, with excessive worry, and his mood was described by the examiner as a near continuous panic. 
Nevertheless, the Veteran’s speech was linear and logical. He showed no hallucinations or delusions, nor lapses in judgment. He also had no suicidal or homicidal ideations. 
During this period, while the Veteran still endorsed chronic sleep impairment, it does not appear that it had worsened. While the Veteran’s sleep symptoms may have induced his anhedonia and anergia, they do not warrant a rating in excess of 70 percent.
The Veteran’s December 2016 VA examiner also noted that he had difficulty with concentration and decision-making. However, at all times during this period, the Veteran’s judgment was found to be sound and intact. Further, the Veteran denied current suicidal and homicidal ideation in his December 2016 examination – even passive suicidal thoughts. Depression, impaired concentration, and sleep impairment are all addressed in the Veteran’s current rating. 
Despite being divorced, the Veteran enjoys relationships with his two step-daughters, and has support from family and friends. At the time of his examination, he was working full time and going to school. Thus, the Veteran has not exhibited total impairment. As such, his symptoms do not merit a rating in excess of 70 percent.
In considering the appropriate disability ratings, the Board has also considered the Veteran’s statements that his disabilities are worse than the ratings he currently receives. In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).
Competency of evidence differs from weight and credibility. While the Veteran is competent to report symptoms because this requires only personal knowledge as it comes to him through his senses, he is not competent to identify a specific level of disability of his disabilities according to the appropriate diagnostic codes. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (“although interest may affect the credibility of testimony, it does not affect competency to testify”). 
On the other hand, such competent evidence concerning the nature and extent of the Veteran’s disabilities has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports) directly address the criteria under which these disabilities are evaluated. Therefore, based on the evidence of record, the Board determines that the ratings for each period on appeal are warranted.
Lastly, while the Veteran applied for and received vocational rehabilitation assistance, the Veteran became employed full-time after receiving said assistance. As such, the Board notes that the evidence does not raise the possibility, nor has the Veteran explicitly asserted, that he was unemployable during the period on appeal. Accordingly, a TDIU claim is not inferred. See Rice v. Shinseki, 22 Vet. App. 447 (2009). 
For the foregoing reasons, increased ratings for the stages of each appeal period described above are not warranted. The appeal is denied.

 
L. B. CRYAN
Acting Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Z. Maskatia, Associate Counsel