﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/20 Archive Date: 03/31/20

DOCKET NO. 190712-13108
DATE: March 31, 2020

ORDER

Entitlement to an initial 50 percent disability rating for major depressive disorder, recurrent with psychotic associated with spondylolisthesis, L5-S1 with spondylosis L-5 is granted prior to May 1, 2018, subject to the controlling regulations applicable to the payment of monetary benefits.

Entitlement to an initial disability rating more than 10 percent for limitation of flexion of the right thigh associated with spondylolisthesis, L5-S1 with spondylosis L-5 is denied.

Entitlement to an initial disability rating more than 10 percent for limitation of flexion of the left thigh associated with spondylolisthesis, L5-S1 with spondylosis L-5 is denied.

Entitlement to an effective date prior to May 1, 2018 for the grant of eligibility to Dependents’ Educational Assistance under 38 U.S.C. § chapter 35 is denied.

Entitlement to an effective date prior to June 25, 2018 for the award of special monthly compensation (SMC) based on housebound criteria being met is denied.

FINDINGS OF FACT

1. Prior to May 1, 2018, the Veteran’s major depressive disorder was manifested by at most occupational and social impairment with reduced reliability and productivity.

2. The Veteran’s right hip disability exhibits painful motion but does not more nearly approximate flexion limited to 30 degrees.

3. The Veteran’s left hip disability exhibits painful motion but does not more nearly approximate flexion limited to 30 degrees.

4. Entitlement to DEA benefits arose on May 1, 2018, the effective date of the Veteran’s award of a 100 percent disability rating for major depressive disorder, recurrent with psychotic associated with spondylolisthesis, L5-S1 with spondylosis L-5.

5. There is no legal or factual basis for an effective date prior to June 25, 2018, for the award of SMC at the housebound rate.

CONCLUSIONS OF LAW

1. The criteria for an initial 50 percent disability rating for major depressive disorder have been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.130, Diagnostic Code 9434 (2019).

2. The criteria for an initial rating in excess of 10 percent for limitation of flexion of the right thigh associated with spondylolisthesis, L5-S1 with spondylosis L-5 are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.71a, Diagnostic Code 5252 (2019).

3. The criteria for an initial rating in excess of 10 percent for limitation of flexion of the right thigh associated with spondylolisthesis, L5-S1 with spondylosis L-5 are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.71a, Diagnostic Code 5252 (2019).

4. The criteria for an effective date prior to May 1, 2018 for the award of DEA benefits have not been met. 38 U.S.C. §§ 3500, 3501, 3510 (2012); 38 C.F.R. § 21.3021 (2019).

5. The criteria for an effective date prior to June 25, 2018, for SMC at the housebound rate are not met. 38 U.S.C. §§ 1114(s), 5101, 5103, 5103A, 5107 (2012); 38 C.F.R. § 3.350 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from May 1972 to January 1975. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, also known as the Appeals Modernization Act (AMA). Pub. L. No. 115-55, 131 Stat. 1105 (2017) (to be codified as amended in scattered sections of 38 U.S.C.). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review on or after February 19, 2019. As this case is an appeal of a February 26, 2019 rating decision, this decision has been written consistent with the new AMA framework. 

In July 2019, the Veteran submitted a VA Form 10182 (Decision Review Request: Board Appeal) electing direct review by the Board of the same evidence the local regional office (RO) considered when adjudicating the claims.

Increased Ratings

Pertinent legal criteria

Disability evaluations are determined by the application of a schedule of ratings, which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. Each disability must be viewed in relation to its history, with an emphasis on the limitation of activity imposed by the disabling condition. Medical reports must be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. See 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.2, 4.7 (2018).

The United States Court of Appeals for Veterans Claims (Court) has held that in determining the present level of a disability for any evaluation claim, the Board must consider the application of staged ratings. See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary.

Major depressive disorder

The Veteran was awarded service connection for major depressive disorder, recurrent with psychotic associated with spondylolisthesis, L5-S1 with spondylosis L-5 in the above-referenced February 2019 rating decision and assigned a 30 percent disability rating prior to May 1, 2018 and a 100 percent disability rating thereafter under 38 C.F.R. § 4.130, Diagnostic Code 9434. The Veteran contends that a higher disability rating is warranted for the major depressive disorder prior to May 1, 2018.

Major depressive disorder is evaluated under the General Rating Formula for Mental Disorders. See 38 C.F.R. § 4.130, Diagnostic Code 9434. Under the General Rating Formula for Mental Disorders, a 100 percent rating requires total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation, or own name. Id. 

A 70 percent rating requires occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); or inability to establish and maintain effective relationships. Id.

A 50 percent rating requires occupational and social impairment with reduced reliability and productivity, due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing effective work and social relationships. Id.

A 30 percent rating requires occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 

A 10 percent rating requires occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication. 

A Global Assessment of Functioning (GAF) score is a quantifiable assessment of overall functioning used by mental health clinicians that reflects an individual’s “psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.” See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); Richard v. Brown, 9 Vet. App. 266 (1996) (both citing the American Psychiatric Association’s Diagnostic and Statistical Manual for Mental Disorders, Fourth Edition (DSM-IV), p. 32 (1994)). 

Effective August 4, 2014, VA amended the portion of the Rating Schedule dealing with mental disorders and its adjudication regulations that define the term “psychosis” to remove outdated references to the DSM-IV and replace them with references to the recently updated Fifth Edition (DSM-5). See 79 Fed. Reg. 149, 45094. The provisions of the interim final rule apply to all applications for benefits that are received by VA or that were pending before the AOJ on or after August 4, 2014. Id. VA adopted as final, without change, the interim final rule and clarified that the provisions of this interim final rule do not apply to claims that have been certified for appeal to the Board or are pending before the Board as of August 4, 2014. See 80 Fed. Reg. 53, 14308 (March 19, 2015). As the Veteran’s claim was received by the Board in July 2019, the claim is governed by DSM-5. 

The Board notes that the use of GAF scores has been abandoned in the DSM-5 because of, among other reasons, “its conceptual lack of clarity” and “questionable psychometrics in routine practice.” See Diagnostic and Statistical Manual for Mental Disorders, Fifth edition, p. 16 (2013). As the Veteran’s case is governed by the DSM-5, the Board will not discuss any assigned GAF scores. 

When evaluating mental health disorders, the factors listed in the Rating Schedule are simply examples of the type and degree of symptoms, or their effects, that would justify a particular rating; the analysis should not be limited solely to whether a veteran exhibited the symptoms listed in the Rating Schedule. Rather, the determination should be based on all of a veteran’s symptoms affecting his level of occupational and social impairment. See Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). The lists of symptoms under the Rating Schedule are meant to be examples of symptoms that would warrant the disability evaluation, but are not meant to be exhaustive. Id. 

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994).

The Veteran was provided a VA examination in March 2013. She reported that she has a male roommate who assists her if she needs help. She slept for most of the day due to medication taken for insomnia as well as due to pain in her back. She also reported an angry mood as well as sadness and disinterest. She felt “drained” and reported that she basically “hates everybody.” The VA examiner documented symptoms of depressed mood, anxiety, and chronic sleep impairment. The VA examiner further opined that the Veteran’s mental health impairment was manifested by occupational and social impairment due to mild or transient symptoms. 

The Veteran was provided another VA examination on May 1, 2018. She reported that she had lived with her half-sister since June 2016 since the death of her parents and explained that she had no friends in her sister’s neighborhood. She was single and had no children. She continued to experience depression and had been collection Social Security Disability since 1994. The VA examiner documented mental health symptoms of depressed mood, suspiciousness, near-continuous panic or depression, chronic sleep impairment, difficulty in understanding complex commands, impaired judgment, gross impairment in thought processes or communication, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, inability to establish and maintain effective relationships, impaired impulse control, persistent delusions or hallucinations, grossly inappropriate behavior, and neglect of personal appearance and hygiene. The examiner opined that the Veteran’s mental health impairment was manifested by total social and occupational impairment. 

VA treatment records also document treatment for the Veteran’s major depressive disorder prior to May 1, 2018. Notably, during a May 2009 evaluation, she reported memory loss as well as conflict with her sister and anger towards her nephew. Additionally, D.H., the Veteran’s sister, submitted a statement dated May 2018 in which she indicated the Veteran had a history of depression, irritability, and difficulty taking care of herself. 

Based on the foregoing, and resolving the benefit of the doubt in the Veteran’s favor, the Board finds that a 50 percent rating is warranted for the Veteran’s major depressive disorder prior to May 1, 2018. In this regard, the Board finds that the impact of the Veteran’s major depressive disorder on her social and industrial functioning is sufficient to approximate the degree of impairment contemplated by a 50 percent rating during this period. See 38 C.F.R. § 4.7 (2019). Criteria for the assignment of a 50 percent rating, which have arguably been met or approximated include disturbances of motivation and mood, memory loss, and difficulty in establishing effective work and social relationships. The Board also finds that the evidence as whole indicates that the Veteran’s major depressive disorder traits also include sleep impairment, hyperarousal, intrusive thoughts, feelings of isolation, and hypervigilance. In consideration of these symptoms with the Veteran’s other major depressive disorder symptoms, the Board finds that these criteria approximate a 50 percent disability rating. As such, given the actual psychiatric symptoms shown in this case, the Board finds that level of overall psychiatric impairment is shown to be consistent with a 50 percent rating prior to May 1, 2018. 

However, the Board finds that the Veteran is not entitled to a higher 70 percent disability rating for her major depressive disorder prior to May 1, 2018. In this regard, the Board notes that the Court of Appeals for the Federal Circuit (Federal Circuit) held in Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013) that “in the context of a 70 percent rating, § 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas.” 

The Board acknowledges the medical evidence documenting the Veteran’s impaired impulse control and difficulty in adapting to stressful circumstances, including work or a worklike setting which are criteria consistent with a 70 percent rating. However, the evidence indicates that during the period under consideration, the Veteran did not demonstrate symptoms such as suicidal ideation, neglect of personal appearance and hygiene, near-continuous panic or depression, obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure or irrelevant; and spatial disorientation. On the contrary, the March 2013 VA examination report as well as VA treatment records indicate that the Veteran’s hygiene was essentially normal, did not endorse obsessional rituals which interfered with routine activities, speech was within normal limits, and she was oriented during examinations. Moreover, the Board finds that an inability to establish and maintain effective relationships is not demonstrated during the period under consideration. While the Board acknowledges the Veteran’s social impairment, she reported during the March 2013 VA examination that she had a male roommate who helped her. Further, during the period under consideration, she has maintained a relationship with her sister that although is sometimes strained, is generally positive and helpful to the Veteran. As such, the evidence does not indicate an inability to establish and maintain effective relationships during the period under consideration. 

In light of the foregoing, the Board concludes that, while the Veteran demonstrates some of the criteria listed for a 70 percent disability rating, the evidence of record does not show that her overall level of severity more closely approximates the criteria for a 70 percent disability rating under 38 C.F.R. § 4.130 prior to May 1, 2018. Moreover, there are no other factors which would lead the Board to conclude that a 70 percent disability rating is warranted for this period. See Mauerhan, supra [the specified factors for each incremental rating are examples rather than requirements for a particular rating; analysis should not be limited solely to whether the claimant exhibited the symptoms listed in the rating scheme]. Rather, her level of functioning is greater than that contemplated by the 70 percent rating category.

Accordingly, the Board finds that a 50 percent disability rating, and no higher, is warranted for the Veteran’s major depressive disorder prior to May 1, 2018.

Right and left thigh limitation of flexion

When evaluating musculoskeletal disabilities based on limitation of motion, 38 C.F.R. § 4.40 requires consideration of functional loss caused by pain or other factors listed in that section that could occur during flare-ups or after repeated use and, therefore, not be reflected on range-of-motion testing. 38 C.F.R. § 4.45 requires consideration also be given to less movement than normal, more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a (musculoskeletal system) or § 4.73 (muscle injury); a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a [or 4.73] criteria.”).

In the above-referenced February 2019 rating decision, the Veteran was awarded service connection for right and left thigh flexion and assigned 10 percent disability ratings effective September 9, 2008. The Veteran contends that her right and left hip disabilities are more severe than what is contemplated by the currently assigned 10 percent ratings. 

The Veteran’s right and left hip disabilities are primarily manifested by limitation of motion. As such, the Board finds that Diagnostic Code 5252 is the most appropriate Diagnostic Code to evaluate her hip disabilities. However, the Board will also discuss below whether other Diagnostic Codes pertaining to the hip and thigh are applicable. 

Normal ranges of motion of the hip are for hip flexion from 0 degrees to 125 degrees and hip abduction from 0 degrees to 45 degrees. 38 C.F.R. § 4.71, Plate II. 

Limitation of motion of the hip or thigh may be rated under Diagnostic Code 5250 (ankylosis of the hip), Diagnostic Code 5251 (limitation of extension), 5252 (limitation of flexion), or Diagnostic Code 5253 (impairment of the thigh).

Diagnostic Code 5251 provides a 10 percent disability rating for limitation of extension of the thigh that is limited to 5 degrees. 38 C.F.R. § 4.71a.

Diagnostic Code 5252 provides ratings based on limitation of flexion of the thigh. A 10 percent disability rating is for flexion of the thigh that is limited to 45 degrees; a 20 percent rating is for flexion of the thigh that is limited to 30 degrees; a 30 percent rating is for flexion of the thigh that is limited to 20 degrees; and a 40 percent rating is for flexion of the thigh that is limited to 10 degrees. 

Under Diagnostic Code 5253, impairment of the thigh may be rated based on limitation of abduction, limitation of adduction, or limitation of rotation. A 10 percent rating will be assigned for limitation of rotation where the individual cannot toe-out more than 15 degrees on the affected leg, or for limitation of adduction where the individual cannot cross the legs. A 20 percent rating will be assigned for limitation of abduction where there is motion lost beyond 10 degrees.

Diagnostic Code 5254 provides an 80 percent rating will be assigned for hip flail joint. 

Under Diagnostic Code 5255, a 10 percent rating is warranted when there is malunion of the femur with slight knee or hip disability; a 20 percent rating is warranted when there is malunion of the femur with moderate knee or hip disability; and a 30 percent is warranted when there is malunion of the femur with marked knee or hip disability. The words “slight,” “moderate,” and “marked” are not defined in the rating schedule. Use of terminology by VA examiners and others, although evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

Diagnostic Code 5255 also provides that a rating of 60 percent is warranted when there is fracture of the surgical neck of the femur with false joint, or when there is impairment of the femur with nonunion, without loose motion and weight bearing is preserved with aid of a brace. A rating of 80 percent is warranted when there is fracture of the shaft or anatomical neck of the femur with nonunion and loose motion (spiral or oblique fracture). 38 C.F.R. § 4.71a, Diagnostic Code 5255.

The Veteran was provided a VA examination in March 2013. She was diagnosed with a bilateral hip strain. She reported constant hip pain but did not report flare-ups. She used a wheelchair and cane for ambulation. Range of motion testing revealed right and left hip flexion to 125 degrees or greater with pain at that point and extension to zero degrees with no objective evidence of painful motion. For both hips, abduction was not lost beyond 10 degrees, adduction was not limited such that the Veteran could not cross her legs, and rotation was not limited such that the Veteran could not toe-out more than 15 degrees. The Veteran was able to perform repetitive use testing three times with no additional loss of flexion, although extension was limited to 5 degrees or greater. No functional loss was recorded. Muscle strength testing in both hips was 5/5. There was no finding of ankylosis, malunion or nonunion of femur, flail hip joint, or leg length discrepancy. 

The Veteran was provided another VA examination in May 2018. She was diagnosed with bilateral femoral acetabular impingement syndrome. She reported flare-ups described as a shooting pain down the legs and ankles. She also noted functional loss manifested by limitation of mobility requiring the use of a power chair. She used a cane and power chair for ambulation. Range of motion testing revealed right hip flexion to 125 degrees, extension to 30 degrees, abduction to 45 degrees, adduction to 25 degrees, external rotation 60 degrees, and internal rotation to 40 degrees. Left hip flexion was to 125 degrees, extension to 30 degrees, abduction to 45 degrees, adduction to 25 degrees, external rotation to 50 degrees, and internal rotation to 30 degrees. For both hips, adduction was not limited such that the Veteran could not cross her legs. Range of motion did not itself contribute to a functional loss. There was no objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue. The Veteran was able to perform repetitive use testing with no additional loss of motion. The examiner also noted no evidence of pain on passive range of motion or pain on non-weight bearing testing. Muscle strength testing was 3/5. There was no finding of muscle atrophy or ankylosis. There was also no finding of malunion or nonunion of femur, flail hip joint, or leg length discrepancy. 

The Board notes a May 2013 private treatment report from D.S., DC noting the Veteran’s treatment for bilateral hip pain which affects her activities of daily living and causes pain when standing, sitting, and walking. 

Upon review of all the evidence of record during the period under consideration, the Board finds that higher ratings in excess of 10 percent for the right and left hip disabilities under Diagnostic Codes 5254 and 5255 is not warranted as the evidence does not indicate that the Veteran’s hips are manifested by flail joint or fracture or malunion of the femur. 

Moreover, higher ratings are not warranted under Diagnostic Code 5252 as the next higher 20 percent rating requires flexion limited to 30 degrees. As discussed above, the March 2013 and May 2018 VA examination reports document right and left hip flexion to 125 degrees even with consideration of pain. There are no greater limitations of flexion in the record during the period under consideration. 

Further, the Veteran’s right and left hip abduction was noted to be limited to no less than 45 degrees, adduction to no less than 25 degrees, internal rotation to no less than 30 degrees, and external rotation to no less than 50 degrees. There was no indication that the Veteran was unable to cross her legs or an inability to toe-out more than 15 degrees. The Board finds that these limitations do not more nearly approximate higher or separate ratings under Diagnostic Code 5253 for limitation of abduction with loss of motion beyond 10 degrees or inability to cross legs or to toe-out more than 15 degrees. 

The Board next finds that a separate 10 percent rating for limitation of extension of the thigh for either hip is not warranted under Diagnostic Code 5251. Although the Board acknowledges the March 2013 VA examination report noting extension limited to 5 degrees or greater after repetitive-use testing, there is no other testing of hip extension reflecting such a finding. Pertinently, the May 2018 VA examination documented extension to 30 degrees even with consideration of pain. As such, the Board finds that a separate compensable rating under Diagnostic Code 5251 is not warranted for either hip. 

Additionally, the Board has considered the Veteran’s complaints of functional impairment. See DeLuca, supra. However, the Board places greater probative value on the objective clinical findings which do not support an increased disability rating. The Board further finds that the 10 percent ratings adequately compensate the Veteran for any functional impairment attributable to her right and left hip disabilities. See 38 C.F.R. §§ 4.41, 4.10 (2019). 

For the reasons set forth above, the Board finds that ratings in excess of 10 percent for right and left hip limitation of flexion of the thighs are not warranted.

Earlier effective date for DEA benefits

The Veteran asserts that she is entitled to an effective date prior to May 1, 2018 for eligibility for DEA benefits. For the purposes of DEA benefits, basic eligibility exists if a veteran was discharged from service under conditions other than dishonorable, and if he or she has a permanent and total service-connected disability. 38 U.S.C. § 3501; 38 C.F.R. §§ 3.807, 21.3021. There are other avenues through which basic eligibility may be granted; however, they involve factors not applicable here, e.g., the death of a veteran or if a veteran is currently on active duty. Id. 

In this case, the Board notes that the Veteran is currently in receipt of a 100 percent disability rating for major depressive disorder recurrent with psychotic associated with spondylolisthesis, L5-S1 with spondylosis L-5 effective May 1, 2018. She is not in receipt of a 100 percent disability rating for any other disability nor is she in receipt of a TDIU. As such, the Board finds that the Veteran is entitled to DEA benefits from May 1, 2018 as she has a permanent and total service-connected disability effective from this date. The Board further finds that entitlement to an effective date prior to May 1, 2018 for DEA benefits is not warranted. Since eligibility for DEA benefits is predicated on a finding of permanent and total disability, in this case, the effective date of such eligibility cannot precede the date permanent and total disability was awarded. Accordingly, an effective date prior to May 1, 2018 for DEA benefits is denied.

Earlier effective date for SMC at the housebound rate

In general, the effective date of an evaluation and award of compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400.

Effective March 24, 2015, VA amended its regulations to require that all claims governed by VA’s adjudication regulations be filed on a standard form. The amendments also, inter alia, eliminate the constructive receipt of VA reports of hospitalization or examination and other medical records as informal claims to reopen. See 79 Fed. Reg. 57,660 (Sept. 25, 2014), codified as amended at 38 C.F.R. §§ 3.151, 3.155 (2019). The amended regulations are applicable to this case. 

The Veteran was granted SMC based on housebound criteria being met in the February 2019 rating decision based on her 100 percent rating for major depressive disorder, recurrent with psychotic associated with spondylolisthesis, L5-S1 with spondylosis L-5 from May 1, 2018 and additional service-connected disabilities of sciatica of the right and left lower extremities associated with spondylolisthesis, L5-S1 with spondylosis L-5 each rated 60 percent disabling from June 25, 2018. The Veteran essentially argues that an earlier effective date for the award of SMC is warranted. However, the evidence of record does not show that the Veteran was rated at 100 percent for one disability and at 60 percent or more for an additional disability prior to June 25, 2018. 38 U.S.C. § 1114(s). The evidence does not otherwise support an award of this type of SMC on any other basis of entitlement. Accordingly, the Board concludes that the Veteran is not entitled to an earlier effective date for the award of SMC at the housebound rate.

 

 

R. Erdheim

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Nadia Kamal, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.